[Civ. No. 24850. Second Dist., Div. Two. Feb. 16, 1961.]

THE CITY OF SANTA BARBARA, Appellant, v. MODERN NEON SIGN COMPANY (a Corporation) et al., Respondents.

Stanley T. Tomlinson, City Attorney, and Ardy V. Barton, Assistant City Attorney, for Appellant.

Price, Postel & Parma, Robert M. Jones, Trevey, Schwartz & Wood and Edward J. Trevey for Respondents.

ASHBURN, J.—The city of Santa Barbara appeals from a judgment denying it any relief in an action brought to compel compliance with its Sign Ordinance, Number 2598, effective April 7, 1957. The specific objective of the action was to compel alteration of certain moving signs belonging to

defendants, alteration which would eliminate all motion. Three of them are located in the commercial zone of the city and the fourth in a commercial-manufacturing zone. All had been built pursuant to permits issued by the city in accordance with an existing ordinance and were placed in operation before adoption of said Ordinance Number 2598.

The pertinent terms of the ordinance are as follows:

"SECTION 2: PURPOSE: Whereas the city of Santa Barbara is a community of fine homes and buildings, and has, over a period of years, attempted through general civic efforts, the Plans and Planting Committee, and other citizen's committees, and the Architectural Board of Review, to make this one of the most beautiful cities on the Pacific Coast with a distinctive architecture; and

"Whereas, unless properly regulated, signs can be a hazard to the community, particularly with regard to fire protection of certain buildings and structures and to the vision of those in vehicular traffic; and

"Whereas, the Council of the City of Santa Barbara has found that unless restrictive and adequate sign legislation is adopted, the safety and welfare of the citizens and residents may be seriously effected to the detriment of the entire community; . . ."

"SECTION 4: DEFINITIONS: As used in this Ordinance, unless the context otherwise indicates, words and phrases not defined are to be construed according to the approved usage of the English language. . . .

"(21) MOVING SIGNS: Any sign or advertising structure which has any visible moving parts, visible revolving parts or visible mechanical movement of any description (excepting clocks). . . .

"(14) FLASHING SIGN: Shall mean any sign or advertising structure which has any flashing device, intermittent, illumination or revolving lighting device, thereon or in connection therewith."

"SECTION 8: SIGNS PROHIBITED: The following signs are prohibited within the City limits of Santa Barbara:

"(1) Horizontal Wing Type signs.

"(2) Wind signs.

"(3) Horizontal "V" Type signs except upon approval by the City Council after recommendation by the Architectural Board of Review.

"(4) Moving signs.

"(5) Outline Tubing."

"SECTION 38: NON-CONFORMING SIGNS:

"(a) Amortization period:

"1. Every sign or other advertising structure in existence on adoption of this Ordinance, and which violates or does not conform to the provisions hereof, shall be removed or altered or replaced so as to conform with the provisions of this Ordinance within five (5) years of adoption of date hereof.

"2. Every moving sign visible from any public way or thoroughfare shall be altered to prevent such movement within one (1) year from date of adoption hereof."

"SECTION 13: TRAFFIC HAZARD SIGNS: No sign or other advertising structure shall be erected so as to obstruct free and clear vision of vehicular traffic or at any location where it may interfere with, or be confused with any authorized traffic sign, signal or device."

Defendants contended below, and the court found, that the ordinance as applied to them is unconstitutional in that (a) it reflects an arbitrary and unreasonable classification with respect to moving and flashing signs, proscribing the former and permitting continued use of the latter; and (b) the ordinance prescribes an unreasonably short amortization period for the respective signs, provides no compensation and amounts to a taking or damaging of defendants' property without compensation, and without due process of law. The respondents' proof clearly shows that the signs in question do not constitute traffic hazards and are not within section 13 of the ordinance.

The language of sections 4(21) and 4(14), quoted above, is so obscure in some respects as to render difficult, if not impossible, a determination whether a given sign falls in the one category or the other. Respondents' evidence clearly established that a flashing sign gives the appearance of movement and has the same effect upon the eye as does the moving sign. The court found: "That 'flashing signs' as defined in said Sign Ordinance can be and have been validly designed, fabricated, constructed, erected, placed and located under and pursuant to said Sign Ordinance so as to produce an optical illusion of movement, which illusion of movement has the same visual effect upon the public and those driving on and using the public streets as the 'moving signs' which are the

subject of this action and which latter signs are prohibited under the same Sign Ordinance." Also, by way of conclusion: "That the allowance of 'flashing signs' under said Sign Ordinance, and the prohibition of 'moving signs' under the circumstances and in the manner set forth in the Findings of Fact, under said ordinance, is unconstitutional in its operation and effect upon defendants in that said allowance on one hand and prohibition on the other is based upon an arbitrary and unreasonable classification having no reasonable relation to the public health, safety, welfare and morals." That this is a sound ruling is well sustained by the authorities.

"A statute is not general or uniform, but makes an improper classification, if it confers particular privileges or imposes peculiar restrictions or disabilities upon a class arbitrarily selected from a larger number of persons, all of whom stand in the same relation to the privileges granted or burdens imposed, and between whom and the persons not so favored or burdened no reasonable distinction or substantial difference can be found to warrant the inclusion of the one and the exclusion of the other." (11 Cal.Jur.2d § 272, p. 719.) *City of Pasadena* v. *Stimson*, 91 Cal. 238, 251 [27 P. 604] : "The conclusion is, that although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law." *Martin* v. *Superior Court,* 194 Cal. 93, 100 [227 P. 762] : "The classification, however, must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic, or constitutional, which suggests a reason for and justifies the particular legislation. That is to say, not only must the class itself be germane to the purpose of the law but the individual components of the class must be characterized by some substantial qualities or attributes which suggest the need for and the propriety of the legislation." There is no natural, intrinsic, or constitutional distinction which furnishes a reason for or justifies the classification of moving and flashing signs in the manner found in the sign ordinance in question.

Respondents' contention that the ordinance operates to take their property without compensation and without due process of law, that it exceeds legitimate exercise of the police power, must be sustained also.

These signs were constructed pursuant to permits issued by the city based upon plans and specifications furnished by each applicant, all as authorized by an ordinance existing before the Sign Ordinance of April 7, 1957, was passed. Defendant Kerry's sign was completed on November 28, 1956, and is leased by him from defendant Modern Neon Sign Company, its owner. Kerry's total rent obligation to Modern for the 60-month term of the lease is $5,733. Roche's sign was completed on August 13, 1956, is leased from Modern Neon Sign Company, and carries total rental of $6,696; Arca's sign was completed March 18, 1957, less than a month before enactment of the new ordinance. He bought it on monthly payments aggregating $1,882.46. Castagnola's sign is owned by him, was finished on February 22, 1957, and cost $1,519.44. The reasonable economic life of each sign is at least 10 years.

On May 20, 1958, the director of the city's building department notified respondents-defendants that their respective signs were "in violation of Ordinance No. 2598. As per Section 38 of the above Ordinance, the rotation or motion of a sign is not allowed," and requested immediate compliance with the ordinance. No other claim of violation of the law was asserted, nor is any found in plaintiff's complaint. The court found: "That the functional design of each of said signs is suitable only as a moving sign, and for that reason if said signs, or any of them, were altered so as to prevent movement, each sign would thereupon become valueless as an advertising media for defendants' respective businesses.

"That because of the design or [sic] each of said signs as a moving sign, if said signs, or any of them, were altered so as to prevent movement, each sign would thereupon become valueless to each defendant concerned.

"That the entire value of each of said signs to the respective defendant concerned depends wholly and entirely upon the continued movement of the sign in the manner as originally designed, fabricated and constructed pursuant to permits duly issued by the City of Santa Barbara."

The sufficiency of the evidence to support these findings is not challenged except in this broad way: "Other Findings of Fact contained in paragraphs XXXIII and XXXIV . . .

are contrary to common sense. If the signs are stopped in their revolving movement they can still be read like any other sign. The findings hold that they are *completely* value-less.'' Certainly this does not comply with the rule that an appellant must demonstrate the insufficiency of the evidence upon any issue which he claims not to be supported. (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550]; *New* v. *New,* 148 Cal.App.2d 372, 383 [306 P.2d 987].)

In the field of zoning, it is established that destruction of a nonconforming building or discontinuance of its nonconforming use cannot be accomplished immediately without compensation; that a reasonable amortization period must be allowed. (See *Trans-Oceanic Oil Corp.* v. *City of Santa Barbara,* 85 Cal.App.2d 776, 783-788 [194 P.2d 148]; *City of Los Angeles* v. *Gage,* 127 Cal.App.2d 442, 454, 460 [274 P.2d 34]; *City of La Mesa* v. *Tweed & Gambrell Mill,* 146 Cal.App.2d 762, 769 [304 P.2d 803]; *Griffin* v. *County of Marin,* 157 Cal.App.2d 507, 511 [321 P.2d 148]; *McCaslin* v. *City of Monterey Park,* 163 Cal.App.2d 339, 346-347 [329 P.2d 522].) While the instant ordinance cannot be classified as zoning, these cases are equally applicable at bar for the question is one of fundamental constitutional rights. They do not vary with the form of attack upon them. If a zoning ordinance cannot effect an immediate noncompensated impairment of a property owner's vested rights neither can an advertising sign ordinance do so. The same principle applies. The court found: ''That the alteration of any of said signs so as to prevent movement, within one year from the date of the adoption of the Sign Ordinance, would result in denying to defendants, and each of them, the benefits of the full remaining economic life of said signs commensurate with the investment in said signs by each defendant. . . .

''That said Sign Ordinance does not provide for the payment of compensation for the taking of defendants' property, and no compensation has been offered or tendered to defendants by plaintiff City of Santa Barbara.'' By way of conclusion: ''That the operation and enforcement of the Sign Ordinance as to all defendants deprive them of their said property and the use thereof for the full and reasonable economic life of said property, in that the reasonable economic life of said property as moving signs extends for a much greater period of time, to wit, at least ten years, than the one year period provided in Section 38(a) (2) and,

hence, the operation and enforcement of said sign ordinance as to the defendants is unconstitutional in that said operation and enforcement would be unreasonable and.arbitrary.'' Unquestionably, the authorities support this conclusion as do sound and familiar principles of constitutional law. If it be true, as appellant contends, that the value of the sign is not completely destroyed by enforcement of the Sign Ordinance, it nevertheless appears that it is substantially impaired and that is a taking for which compensation must be made.

Appellant's claim that the court did not find to be unreasonable a one-year period for discontinuance of the present use cannot be sustained. The findings last quoted above show this. Also the following: ''That the provisions of said Sign Ordinance requiring defendants' signs be altered so as to prevent movement within one year from the date of adoption of said sign ordinance and thereby rendering said signs valueless to defendants, and each of them, constitutes an unlawful taking of defendants' property.''

Appellant argues that there is no finding that the Sign Ordinance is not a law directed at traffic hazards and sustainable on that ground; also, that there should have been a finding on that subject. Counsel for appellant repeatedly asserted throughout the trial that there was no issue of traffic hazard. Near the close of the hearing, the city attorney read to the court section 13 of the ordinance and said: ''Certainly no pleading or at no place else in this action is that section brought in issue in any way, shape or manner. If we had contended that any of these signs met these conditions set forth in Section 13, this action would have been brought the day after—presumably would have been brought the day after this ordinance became effective. That is to say, Section 13 defines a nuisance in the same sense that Section 413 or 433 of the Vehicle Code defines a nuisance. This is an element that is not to be injected in this case. It can only result in confusion, and we suggest, therefore, that the question is entirely irrelevant, incompetent and immaterial. We are dealing with signs that are visible from a public highway, as in 38(a) (2) of the ordinance . . . .'' The record does not sustain appellant's contention in this regard. The court found: ''That the only non-compliance with said Sign Ordinance by defendants consists in the fact that said signs have not been altered to prevent movement pursuant to the provisions of Section 38(a) (2) of the Sign Ordinance.

"That none of said signs, nor any of them, which are the subject of this action, have ever obstructed, and do not now obstruct, free and clear vision of vehicular traffic.

"That none of said signs have been, and are not now, located so as to interfere with, or be confused with any authorized traffic sign, signal or device. . . ."

These findings adequately dispose of any question of the signs being traffic hazards, are supported by substantial evidence and adequately cover the subject of traffic hazards in relation to the signs in question.

The appellant's case is reduced to reliance upon aesthetic considerations in order to sustain the ordinance. Section 2 thereof (quoted *supra*) refers to such matters and appellant's opening brief says: "A close examination of the law and the facts reveals that there is really nothing unique about this case except that the city has candidly and accurately based its legislation on aesthetics as well as on traffic safety and zoning." The trial judge: "That the intent and purpose of the Sign Ordinance in its application to defendants' signs is to eliminate the movement of each of said signs and said intent and purpose is based solely upon aesthetic grounds and considerations and upon no other grounds. . . .

"The prohibition of 'moving signs' in Sign Ordinance No. 2598 is based solely and wholly upon aesthetic grounds and considerations, and as such said prohibition constitutes an unconstitutional exercise of the police power of plaintiff City of Santa Barbara."

 In its present state the law of this jurisdiction is that aesthetic considerations alone cannot sustain a statute or ordinance which impinges substantially upon private property rights.

*Varney & Green* v. *Williams*, 155 Cal. 318, 320 [100 P. 867, 132 Am.St.Rep. 88, 21 L.R.A. N.S. 741]: "That the promotion of aesthetic or artistic considerations is a proper object of governmental care will probably not be disputed. But, so far as we are advised, it has never been held that these considerations alone will justify, as an exercise of the police power, a radical restriction of the right of an owner of property to use his property in an ordinary and beneficial way. Such restriction is, if not a taking, *pro tanto,* of the property, a damaging thereof, for which, under section 14 of article I, of the constitution, the owner is entitled to com-

pensation. To this extent the authorities are all in accord. 'No case has been cited,' says the court of errors and appeals of New Jersey in *City of Passaic* v. *Paterson etc. Co., 72 N.J.L. 285 [62 A. 267, 111 Am.St.Rep. 676], 'nor are we aware of any case which holds that a man may be deprived of his property because his tastes are not those of his neighbors. Aesthetic considerations are a matter of luxury and indulgence rather than of necessity, and it is necessity alone which justifies the exercise of the police power to take private property without compensation.'" (See also *Abbey Land etc. Co.* v. *County of San Mateo,* 167 Cal. 434, 438-439 [139 P. 1068, Ann.Cas. 1915C 804, 52 L.R.A. N.S. 408] ; *Redevelopment Agency* v. *Hayes,* 122 Cal.App.2d 777, 801 [266 P.2d 105] ; *People* v. *Dickenson,* 171 Cal.App.2d Supp. 872, 874 [343 P.2d 809].)

Undoubtedly, the trend in some states is toward recognition of such considerations as sufficient basis for legislation which impinges upon property rights. (See 11 Am.Jur. § 280, p. 1038; 58 Am.Jur. § 30, p. 959; 62 C.J.S. § 221, p. 407; 46 Cal.L.Rev., pp. 811-812; 8 McQuillin, Municipal Corporations (3d ed. rev.) § 25.29, p. 63.) But that ultimate position has not yet been established. It is to be borne in mind that the present problem is the right of the municipality to effect upon aesthetic grounds alone the destruction or impairment of existing property rights. What it may do with respect to signs to be built in the future is an entirely different question.

Appellant relies upon Business and Professions Code, sections 5291-5293,[1] as an exemplification of aesthetic legislation in action. They are not persuasive, however, for their constitutionality has not been passed upon by the courts. The attorney general was called upon to render an opinion upon

---

[1]*Section 5291:* ''Except as provided in Sections 5292 and 5293, no advertising display shall be placed or maintained on property adjacent to a section of freeway which has been, or hereafter may be, landscaped as defined herein, if the advertising display is designed to be viewed primarily by persons traveling on such landscaped section of a freeway.''

*Section 5292:* ''Any advertising structure or sign which is now, or hereafter shall be, in violation of the provisions of Section 5291, shall be removed within one (1) year from the effective date of Section 5291, or within one (1) year from the date when the project for the landscaping of a section or sections of a freeway shall have been completed or accepted, and the character of said section or sections shall have been changed from a freeway to a landscaped freeway, whichever is later.''

*Section 5293:* ''The provisions of Section 5291 shall not apply to any

the question of "May a county enact an ordinance prohibiting billboards within five hundred feet of freeways in unincorporated areas?" He answered it in the affirmative, holding that the state had not entirely occupied the field. 21 Ops. Cal. Atty. Gen. 43, 45: "If the zoning plan involves only regulation of advertising, then a more serious question arises because such a plan would be for aesthetic purposes only." That problem is then discussed with the following result (p. 46): "There is, however, a definite tendency in this country at the present time for the courts to recognize the validity of zoning based only on aesthetic considerations (8 McQuillin on Municipal Corporations, p. 59). The courts have gone so far as to indicate that the preservation of scenic beauty and of places of historic interest would be sufficient to support such regulations. The theory is that 'grandeur and beauty of scenery contribute highly important factors to the public welfare of a state' (*General Outdoor Advertising Co.* v. *Department of Public Works,* 289 Mass. 149 [193 N.E. 799, 816]; and see cases in 156 A.L.R. pages 586 and 587).

"However, we cannot find that the courts, although expressing this view as dicta, have as yet gone so far as to flatly sustain such a regulation. Under this state of the law we conclude that while all indications are that the courts will eventually uphold ordinances forbidding advertising displays on aesthetic considerations alone, we cannot say that the law has as yet been established that such regulations are valid."

 Counsel for appellant criticize the lower court because it found that the ordinance is unconstitutional as to the defendants, saying it should be struck down, if at all, as to everybody. However, the problem left to the trial court was just the one that it decided. The joint statement for pretrial propounded it in this language: "Is the ordinance constitutional in its application to defendants' signs, for the reasons as in the pleadings and as herein set forth?" And the pretrial

---

advertising structure or sign if the advertising display is used exclusively:

"(a) To advertise the sale or lease of the property upon which such advertising display is placed.

"(b) To designate the name of the owner or occupant of the premises upon which such advertising display is placed, or to identify such premises.

"(c) To advertise goods manufactured or produced, or services rendered, on the property upon which such advertising display is placed."

order: "Is the ordinance constitutional in its application to the said defendants under the law of the State of California[?]" ▇▇▇ One whose rights are not infringed thereby may not contest the constitutionality of a statute or ordinance. 11 California Jurisprudence 2d, section 68, page 393: "In order to raise a constitutional question in a pending case, a party must, as a general rule, show that he is interested in that question in a legal sense. An appellant has no interest to assert that a statute is unconstitutional merely because it might be so construed as to violate the constitution. He must show that he himself is injured or aggrieved by it, in the sense that it violates one or more of his legally protected rights in the very factual situation which he brings before the court. And to raise a constitutional question the party complaining must show that his rights are injuriously affected by the portion of the law he is attacking, and that he is aggrieved by the operation of that particular part of the law."

▇▇▇ It naturally follows that the decree is to be confined to the question presented, e.g., lack of due process with respect to the complaining party, denial to him of equal protection of the law, taking his property without compensation. To the extent that the ruling involves and declares general principles, it stands as a precedent for other complainants; to the extent that it is confined to the rights of individual litigants, it does not do so. The court did not err in this respect.

Other points raised by counsel require no special discussion by the court.

The judgment is affirmed.

Fox, P. J., concurred.