[Civ. No. 20366.   First Dist., Div. Three.   Dec. 27, 1962.]

NATIONAL ADVERTISING COMPANY et al., Plaintiffs and Respondents, v. COUNTY OF MONTEREY et al., Defendants and Appellants.

376

William H. Stoffers, County Counsel and John O. Thornberry, Chief Deputy County Counsel, for Defendants and Appellants.

Noland, Hamerly & Etienne, Wallace, Garrison, Norton & Ray, George F. Barry, Hoge, Fenton, Jones & Appel, Maynard Garrison, Jr., Lewis L. Fenton and Harry L. Noland for Plaintiffs and Respondents.

DRAPER, P. J.—Defendant county and its officers appeal from decree enjoining enforcement of those provisions of a comprehensive zoning ordinance which prohibit construction and maintenance of billboards in certain districts.

The ordinance was adopted April 18, 1955. It distinguishes between "appurtenant" signs, those which "relate only to goods sold or services rendered upon the building site on

which said sign is erected," and all others, which we shall refer to as off-site signs. Appurtenant signs are permitted in most zones but are restricted as to size and number. Off-site signs are permitted only in retail business, general commercial, and industrial zones. Section 12 establishes a "U," or unclassified district, in which the only restrictions prohibit off-site signs and require a use permit for each of some 22 uses. The greater part of the county's unincorporated area is placed in the "U" zone. Enforcement of section 12 against off-site signs was enjoined.

Section 34 provides that nonconforming uses existing at the date of the ordinance may continue, subject to the usual restrictions against enlargement and against replacement after abandonment or destruction. As to off-site signs, however, the section requires removal by July 1, 1960, from districts in which they are not permitted. Enforcement of this section against off-site signs also was enjoined.

The briefs, on both sides, take the all or nothing approach, and in doing so tend to lump together the arguments on sections 12 and 34. There are, however, substantial differences between prospective prohibition and removal of nonconforming uses. For clarity of treatment, and because we have concluded that the judgment must be affirmed in part and reversed in part, we discuss separately the validity of sections 12 and 34.

Section 12 prohibits only new construction of off-site billboards in "U" districts. It does not require removal of any existing sign. Plaintiffs' argument against it, accepted by the trial court, is that it discriminates arbitrarily against off-site boards in "U" districts, since such boards are the only flatly prohibited use in such areas. The question is whether the regulation reasonably tends to promote the public health, safety, morals or general welfare.

Whether the regulation is arbitrary or unreasonable must be determined under the established rules governing judicial review of exercises of the police power. That power is elastic, and capable of expansion to meet existing conditions of modern life (*Consolidated Rock Products Co.* v. *City of Los Angeles*, 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342]). "[D]etermination of the necessity and form of such regulations . . . is primarily a legislative and not a judicial function" (id. 522). If the necessity or propriety of a zoning regulation is a question upon which reasonable minds might

differ (*Miller* v. *Board of Public Works,* 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479]) or is fairly debatable (*Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 462 [202 P.2d 38, 7 A.L.R.2d 990]), the legislative determination will not be disturbed. Thus we must determine whether the board of supervisors, in adopting section 12, may have had in mind considerations supporting the legislation which are fairly debatable or upon which reasonable minds may differ.

Preliminarily, we note that plaintiffs do not attack the prohibition by this ordinance of off-site billboards in residential, agricultural, and similar districts, thus impliedly conceding some basis for distinction between such signs and the many uses permitted in such districts. The concession is required. ■ As long ago as 1916, the United States Supreme Court recognized that there is no constitutional bar to "putting billboards, as distinguished from buildings and fences, in a class by themselves" (*Cusack* v. *City of Chicago,* 242 U.S. 526, 529 [37 S.Ct. 190, 61 L.Ed. 472]). ■ The often-recognized bases in the police power for billboard regulation (see *Murphy, Inc.* v. *Town of Westport,* 131 Conn. 292, 295-298 [40 A.2d 177, 178-180, 156 A.L.R. 568]) exist here. Moreover, the "U" districts provided by the zoning ordinance are essentially rural areas, in which no definite trend toward residential, commercial, industrial or other use has yet developed. The board may well have felt it advisable to maintain such areas in their rural state until such time as a trend to one of the more specialized districts—residential, commercial, industrial or agricultural—develops. An extended zoning plan cannot be made in a day, and its purpose could be frustrated by unrestricted construction which would defeat its ultimate execution (*Miller* v. *Board of Public Works,* 195 Cal. 477, 496 [234 P. 381, 38 A.L.R. 1479]). In this sense, the "U" zone appears designed to keep the rural areas free for development into such districts in the normal course of growth of the county.

Cost of site preparation, construction, and maintenance will restrict development of specific uses until demand makes the projects economically feasible. Meantime, the obnoxious uses are limited by the requirement of use permits. Billboards, which may be constructed quickly and at comparatively little cost, are not subject to the economic restrictions inherent in the more permanent development of a trend toward specific use. There is evidence that installation of billboards in rural

areas tends to restrict development for both residential and agricultural uses.

The supervisors may also have felt that billboards are considered unattractive by tourists generally, and that thus their unrestricted proliferation would adversely affect the substantial tourist industry of Monterey County. ▉ We recognize that esthetic considerations alone cannot justify a zoning regulation (*Varney & Green* v. *Williams*, 155 Cal. 318, 320 [100 P. 867, 132 Am.St.Rep. 88, 21 L.R.A. N.S. 744]); although departure from that view has been suggested (27 So. Cal. L. Rev. 149). ▉ Here, however, the supervisors are not asserting their own view of what is attractive or artistic, but rather are concerned with the economic question of what will repel or attract customers of a substantial business of the county. Considerations of the comfort and safety of the travelling public, in light of the fact that billboards in their nature must be visible and conspicuous whereas other uses are not necessarily so; the comparative ease of installation of billboards and the difficulty, as exemplified by this case, of compelling their removal; the fact that billboards may be erected anywhere along highway frontage, but do not establish a trend to development of definite uses of the district; the fear of "billboard alleys"; all are factors which may have been considered by the legislative body, and which the courts cannot say are palpably unreasonable as grounds for distinguishing between billboards and other land uses.

Plaintiffs argue, however, that the ordinance is not general or uniform, but makes an arbitrary classification in its attempt to distinguish between on-site and off-site signs. The decision principally relied upon by plaintiffs (*City of Santa Barbara* v. *Modern Neon Sign Co.*, 189 Cal.App.2d 188 [11 Cal.Rptr. 57]) states well the established rule that there must be a reasonable basis for exclusion of one class and inclusion of another. On its facts, however, it has no application here.

▉ It is true that signs "relating only to goods sold or services rendered upon the building site on which . . . erected or maintained," as permitted by the ordinance, may, although strictly limited as to size and number, have much the same appearance as off-site signs. A significant difference, however, is that the on-site sign is but a part of, and wholly incidental to, the business conducted upon the site and which the ordinance has properly determined to be permissible in that district. Off-site signs, on the contrary, constitute a wholly

distinct business, that of outdoor advertising (see opinion of Brennan, J., in *United Advertising Corp.* v. *Borough of Raritan*, 11 N.J. 144 [93 A.2d 362]). The ordinance before us merely limits the business of outdoor advertising, as it limits other businesses, to specified districts. An early (1909) case cited by plaintiffs (*Varney & Green* v. *Williams, supra,* 155 Cal. 318) is not in point because it did not involve a comprehensive zoning ordinance.

From other jurisdictions, plaintiffs cite only a trial court opinion (*Central Outdoor Advertising Co.* v. *Village of Evandale* (Ohio Ct. Com. Pleas) 124 N.E.2d 189). The great weight of authority supports the propriety of the classification (*United Advertising Corp.* v. *Borough of Raritan, supra; Kelbro, Inc.* v. *Myrick,* 113 Vt. 64 [30 A.2d 527] ; *Rockingham Hotel Co.* v. *North Hampton,* 101 N. H. 441 [146 A.2d 253] ; *Criterion Service, Inc.* v. *City of East Cleveland* (Ohio App.) 88 N.E.2d 300; *Landau Advertising Co.* v. *Zoning Board of Adjustment,* 387 Pa. 552 [128 A.2d 559] ; *Murphy, Inc.* v. *Town of Westport,* 131 Conn. 292 [40 A.2d 177, 156 A.L.R. 568]). We accept the reasoning of those decisions, and sustain the classification.

It follows that section 12, which prohibits future construction of off-site signs in "U" districts, is valid, and to the extent that the judgment is contrary to this conclusion it must be reversed.

There remains the question of the validity of section 34. This section provides that those off-site advertising structures which under the ordinance become nonconforming uses must be removed after five years. It applies to such signs in "U" districts as well as in those restricted districts in which permitted uses are specified in greater detail.

Obviously, there is a real distinction between legislation which merely prohibits future uses and that which compels discontinuance of existing uses. From the inception of zoning, it has been recognized that ultimate elimination of a nonconforming use may be effected by restrictions upon extension of the nonconforming building, prohibition of its replacement if it be destroyed, and proscription of renewal of the use after discontinuance. ▮▮▮ In general, the older cases drew the line, however, at outright prohibition of continuance of the use after the effective date of the zoning ordinance (*Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14]). In more recent years, it has been recognized that this rule bars only

discontinuance which is immediate, and not that which allows a reasonable amortization period (*City of Los Angeles* v. *Gage*, 127 Cal.App.2d 442 [274 P.2d 34] [hearing denied by Supreme Court]). Zoning legislation "looks to . . . the eventual liquidation of nonconforming uses within a prescribed period commensurate with the investment involved" (*Livingston Rock & Gravel Co.* v. *County of Los Angeles*, 43 Cal.2d 121, 127 [272 P.2d 4]).

But such legislation is valid only if the period of amortization be reasonable (*City of Santa Barbara* v. *Modern Neon Sign Co., supra*, 189 Cal.App.2d 188; *City of La Mesa* v. *Tweed & Gambrell Planing Mill*, 146 Cal.App.2d 762 [304 P.2d 803]). In *Santa Barbara*, a one-year period for modification of recently constructed signs of substantial cost, which modification would render them valueless, was held unreasonable. In *La Mesa*, a five-year period for complete removal of valuable buildings with a remaining useful life of 21 years was similarly held unreasonable.

One who attacks a zoning ordinance as unreasonable, however, bears the burden of establishing this claim (*Beverly Oil Co.* v. *City of Los Angeles*, 40 Cal.2d 552, 559 [254 P.2d 865]; *Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 338 [175 P.2d 542]). Plaintiffs here have offered no evidence whatever which would tend to show that the amortization period of five years is in any way unreasonable. They have not shown the cost of the signs, dates of construction, or their remaining useful life. (Looking to the complaint we note that the maximum claim of the two major plaintiffs is that they have 122 and 133 signs, respectively, in all of the prohibited districts, including "U" zones, and that their total investment amounts to $28,520 and $50,000, respectively, in all signs owned by them in the county. Even if it be assumed that all the investment is in signs which are in prohibited districts, including "U," the cost per sign is $233.75 for one plaintiff and $376.70 for the other.) They have not made an adequate showing as to the number of signs to be removed, since they do not show the distribution of signs in the several districts. This becomes important in view of our holding that the removal provision is invalid as to "U" districts, in which substantial numbers of such signs appear to be. Thus plaintiffs have wholly failed to show that the amortization period of five years is unreasonable as applied to them.

We hold that section 34 is valid insofar as it requires

removal of signs in H, F, O, K, L, R, Y and T districts, as to all of which the ordinance specifies in detail the character of the district and the uses permitted therein.

Our conclusion differs as to the "U" districts. As we have pointed out, these districts are designed as holding areas, whose rural character is to be maintained only until some definite trend toward particular uses begins to develop. The ordinance recognizes that these areas have not reached a point of development warranting more specific regulation. While some may develop as districts in which off-site signs are barred, it is the very essence of this concept that some may develop as commercial or industrial zones, in which off-site signs are permitted. We have held that it is reasonable to prevent hindrance of such development by barring the mushrooming of easily installed off-site signs and by limiting a number of offensive uses through requiring use permits therefor. It is quite another thing, however, to require removal of such signs in areas whose ultimate use is not now determinable. Upholding that portion of the removal requirement could well result in destruction today of a sign which could be rebuilt in the near future.

When a particular "U" district has developed sufficiently to warrant placing it in a specific district, it will be time enough to resort to the remedy of removal.

Prohibition of new sign construction merely keeps the channels of growth and development free of diversion by billboards, until such growth has determined the uses to be permitted and those to be barred. To compel removal before that time is to yield to caprice, rather than reason.

The judgment is affirmed insofar as it enjoins application of section 34 to "U" districts. In all other respects it is reversed, and the trial court is directed to enter judgment in accordance with the views herein expressed. Each party shall bear its own costs on appeal.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied January 23, 1963.