THOMPSON (Raymond), J. pro tem.
 
 *
 

 This appeal involves two consolidated cases: No. 8340—Desert Outdoor Advertising, Inc. versus the County of San Bernardino, and No. 8341—County of San Bernardino versus Desert Outdoor Advertising, Inc. The legal problems involved are identical. For sake of convenience, Desert Outdoor Advertising, Inc., will be referred to as “plaintiff,” and County of San Bernardino will be referred to as “defendant” or “County.”
 
 *763
 
 Case No. 8340 was an action by plaintiff against defendant to restrain it from enforcing the provisions of its zoning ordinance relating to two of the billboards along freeways listed below. Case No. 8341 was an action by the county against Desert Outdoor Advertising, Inc., to abate as nuisances the other two billboards involved herein, also along freeways, allegedly in contravention of the same ordinance. The respective locations and zones in which the signs are located are as follows:
 

 Location
 

 Zone
 

 1. San Bernardino Freeway near Etiwanda Avenue
 

 M-2 General Manufacturing District
 

 2. San Bernardino Freeway near Live Oak Avenue-Fontana Area
 

 B-3 Multiple Family Besidence District
 

 3. Badlands Freeway near YucaipaSan Gorgonio Pass
 

 M-l Limited Manufacturing District
 

 4. Barstow Freeway near Cajon Summit
 

 M-l Limited Manufacturing District
 

 The text of the portion of the ordinance involved is as follows:
 

 “15.10 Signs Adjacent to Freeways :
 

 “a. . . .
 

 “b. Advertising structures shall not be erected, constructed or maintained within 500 feet of any County or State freeway so that the advertising matter thereon shall be visible to the operators of vehicles being driven on said freeway while approaching such structures, except that this subsection shall not apply under the following conditions:
 

 “ (1) In Valley-mountain areas in C-2 or M-l zones if such structures are on the same side of the freeway as, and within 500 feet of a business or industrial structure (other than an advertising structure) located in a C-2 or M-l zone and within 150 feet of the freeway.
 

 “(2) In desert areas and that portion of the valley-mountain area along the Barstow Freeway, Legislative Boute 31 north of the Main Street Over-crossing (Devore), Bridge No. 54-525, in C-2 or M-l zones if such structures are on the same side of the freeway as, and within 500 feet of a business or industrial structure (other than an advertising structure) located in a C-2 or M-l zone and within 150 feet of the freeway. Provided further that a maximum of two advertising structures shall be permitted within an additional 500 feet of
 
 *764
 
 the exterior boundaries described above and as illustrated on the drawing designated Figure 1. Provided further that subject to approval of location and development as provided in Sec. 15.6, advertising structures shall be permitted on the opposite side of the freeway within an area directly opposite and bounded by the exterior boundaries described above and illustrated on the drawing designated Figure 1. Business or industrial structure as used herein shall mean an occupied permanent building attached to a permanent foundation wherein one or more persons are regularly employed. . . .”
 

 The ordinance has customary provisions relating to penal consequences of its violation, and also provides that any structure contrary to its terms is unlawful, is a public nuisance, and may be abated by action in the superior court.
 

 Plaintiff makes a number of contentions, of which we will discuss the following: (1) That neither zoning ordinances nor anti-billboard ordinances may be based on aesthetic considerations alone, and that any ordinance so based violates the due process and equal protection clauses of the Fourteenth Amendment to the U.S. Constitution and cognate provisions of the California Constitution; (2) that the case of
 
 National Advertising Co.
 
 v.
 
 County of Monterey,
 
 211 Cal.App.2d 375 [27 Cal.Rptr. 136], does not support the validity of the questioned parts of this ordinance, but suggests invalidity as applied to plaintiff; (3) that the supervisors’ stated purposes support plaintiff’s position; (4) that the State of California by virtue of its Outdoor Advertising Act has preempted the field as to all aspects of outdoor advertising in unincorporated county areas; and (5) that the enactment is contrary to section 65852 of the Government Code requiring uniformity of regulations within zones.
 

 Concerning the first point, plaintiff’s contention that such an ordinance may not be based on aesthetic considerations alone, we are referred to the ease of
 
 Varney & Green
 
 v.
 
 Williams,
 
 155 Cal. 318 [100 P. 867, 132 Am.St.Rep. 88, 21 L.R.A. N.S. 741], This case, decided in 1909, holds that an ordinance of the town of Bast San Jose, which absolutely prohibited all advertising signs within its corporate limits, could not be sustained on the ground of aesthetic considerations. The following quote gives the essence of the case (p. 320) : “That the promotion of aesthetic or artistic considerations is a proper object of governmental care will probably not be disputed. But, so far as we are advised, it has never
 
 *765
 
 been held that these considerations alone will justify, as an exercise of the police power, a radical restriction of the right of an owner of property to use his property in an ordinary and beneficial way. Such restriction is, if not a taking,
 
 pro tanto,
 
 of the property, a damaging thereof, for which, under section 14 of article I of the constitution, the owner is entitled to compensation. To this extent the authorities are all in accord. ‘No ease has been cited,’ says the court of errors and appeals of New Jersey in
 
 City of Passaic
 
 v.
 
 Paterson, etc. Co.,
 
 72 N.J.L. 285 [62 A. 267, 111 Am.St.Rep. 676, 5 Ann.Cas. 995], ‘nor are we aware of any case which holds that a man may be deprived of his property because his tastes are not those of his neighbors. Aesthetic considerations are a matter of luxury and indulgence rather than of necessity, and it is necessity alone which justifies the exercise of the police power to take private property without compensation. ’ ’ ’
 

 The holdings of recent cases in California are that, although the doctrine of
 
 Varney & Green
 
 v.
 
 Williams, supra,
 
 155 Cal. 318, may still apply, if there is in addition some other justification such as economic advantage to the area an ordinance such as the one under consideration must be sustained. This may be summed up by the following quotation from the very recent case,
 
 County of Santa Barbara
 
 v.
 
 Purcell, Inc.,
 
 251 Cal.App.2d 169, 173 [59 Cal.Rptr. 345]; “Defendants assert that these ordinances ‘bottom solely upon aesthetics.’ Their argument, based upon their interpretation of
 
 Varney & Green
 
 v.
 
 Williams
 
 (1909) 155 Cal. 318 [100 P. 867, 132 Am.St.Rep. 88, 21 L.R.A. N.S. 741], is that zoning laws may only be used to protect the economic interests of a property ower [sic] and not to preserve the priceless beauty of a countryside for all men. It is unnecessary to meet that argument directly, for the trial court has found that in Santa Barbara County scenic environment is commercial. ’ The trial court found that people come to the county because of its natural beauty, and that the maintenance of billboards along the highway may reasonably be believed to have an adverse effect upon the economy.
 

 “Defendants’ arguments as to the constitutionality of these ordinances are answered by what has been said in
 
 National Advertising Co.
 
 v.
 
 County of Monterey
 
 (1962) 211 Cal.App.2d 375 [27 Cal.Rptr. 136];
 
 Metromedia, Inc.
 
 v.
 
 City of Pasadena
 
 (1963) 216 Cal.App.2d 270 [30 Cal.Rptr. 731] ; and
 
 *766
 

 Burk
 
 v.
 
 Municipal Court
 
 (1964) 229 Cal.App.2d 696 [40 Cal.Rptr. 425].”
 

 In the ease at bench, testimony was taken and several witnesses testified that the absence of billboards along freeways would constitute a beautification which, in turn, would tend to attract tourists, settlers and industries to the county, thus establishing economic benefit as an additional base to sustain the provisions of the zoning ordinance under question. The trial court made a finding as follows: “Said provision operates to help provide a favorable environment for private industries, in particular the tourist industry, by the regulation of land use.” On the basis of the foregoing authorities, we must hold that the questioned portion of the ordinance is a proper exercise of the police power.
 

 We will now turn to plaintiff’s contention that the case of
 
 National Advertising Co.
 
 v.
 
 County of Monterey, supra,
 
 211 Cal.App.2d 375, does
 
 not
 
 support the validity of the ordinance in question herein, and, in fact, suggest its invalidity. It calls attention to the following language from that decision at page 382: “Our conclusion differs as to the ‘U’ districts. As we have pointed out, these districts are designed as holding areas, whose rural character is to be maintained only until some definite trend toward particular uses begins to develop. The ordinance recognizes that these areas have not reached a point of development warranting more specific regulation. ... We have held that it is reasonable to prevent hindrance of such development by barring the mushrooming of easily installed off-site signs and by limiting a number of offensive uses through requiring use permits therefor.
 
 It is quite another thing, however, to require removal of such signs in areas whose ultimate use is not now determinable. Upholding that portion of the removal requirement could well result in destruction today of a sign which could be rebuilt in the near future.
 

 “When a particular ‘U’ district has developed sufficiently to warrant placing it in a specific district, it will be time enough to resort to the remedy of removal.
 
 ...” (Italics added.)
 

 The answer to this problem in the ease at bench is that in the ordinance now under consideration we do not have involved a ‘U’ district but are concerned with M-2, R-3 and M-l districts. It is true that the trial judge in the course of preliminary discussions seemed to be under the impression
 
 *767
 
 that the M-l district was a catch-all or holding zone. However, a reading of the ordinance indicates a large number of uses are assigned to that particular zone, and there is no language that indicates it is a holding zone. Thus, the case of
 
 National Advertising Co.
 
 v.
 
 County of Monterey, supra,
 
 211 Cal.App.2d 375, supports the provision of the ordinance in question rather than suggesting its invalidity.
 

 We now go to the question raised relating to the reasons stated by the supervisors for adopting the amendment in question. The amendment under attack contains the following stated reasons for the enactment: “This section is adopted by the Board of Supervisors because said Board finds that advertising structures impair the natural scenic beauty of this County, and constitutes a hazard for drivers of vehicles traveling on the nearby freeways within the County. ’ ’
 

 Plaintiff points out that the second of the two stated reasons, “auto safety,” is one which is completely within the domain of the state, and the counties are forbidden to participate in the making of highway and safety regulations with few exceptions. It quotes 21 Opinions of the Attorney General at page 43: “By the Outdoor Advertising Act the legislature has reserved to the State itself the power to regulate advertising upon property adjacent to public highways in unincorporated areas
 
 from, the standpoint of safety.
 
 ...” (Italics added.)
 

 In view of our holding on this aspect of the case, it is not necessary to decide this question but we will assume,
 
 arguendo,
 
 that “auto safety” is a field which the state has preempted. It does not follow that because one of the stated grounds is improper that the ordinance should fall. There is no law that requires supervisors in passing ordinances to make a statement of a reason or reasons. This is done frequently to assist in the event of need for interpretation in the future, and it has been held that courts may give weight to such legislative recitals.
 

 We have already discussed whether aesthetic consideration alone constitutes a sufficient base for a zone regulation involving billboards. The fact that the supervisors did not include in the reasons related in the ordinance the additional reason of economic advantage to the county does not preclude this court from considering the same in order. to. uphold the enactment.
 

 
 *768
 
 Turning to plaintiff’s contention that the state has preempted the field of outdoor advertising by its Outdoor Advertising Act, the same is answered (if the provisions under attack are “zoning”) by section 5227 (Bus. & Prof. Code) of that act, where it is clearly stated that nothing in the chapter prohibits passage by any county of reasonable land use or zoning regulations affecting the placing of advertising displays in accordance with the provisions of the planning law. This contention was also made in the case of
 
 County of Santa Barbara
 
 v.
 
 Pursell, supra,
 
 251 Cal.App.2d 169, 173, where it was held that counties still have the power to regulate billboards and outdoor advertising by
 
 solving
 
 ordinances.
 

 Next we will consider the points raised by plaintiff as to the effect of Government Code, section 65802 (now § 65852) requiring uniformity of regulation within zones under zoning ordinances. This bears on the vital question of whether the section under consideration is in fact a zoning provision which the county could enact, pursuant to section 5227, Business and Professions Code, or whether it is in reality an anti-billboard ordinance tacked onto a zoning ordinance and therefore within the field of legislation preempted by the state by the Outdoor Advertising Act.
 

 Section 65852 (§ 65802 at the time of the enactment in question) of the Government Code in the chapter on zoning regulations reads as follows•. “All such regulations shall be uniform for each class or kind or building or use of land throughout each zone, but the regulation in one type of zone may differ from those in other types of zones. ’ ’
 

 Ordinance section 15.10 is uniform in application wherever there are equal conditions within a zone in that only the presence or absence of a freeway affects the zoning requirement. Absolute uniformity of land use throughout a zone would be impossible. Varying situations within a zone necessarily must be considered. An example from the San Bernardino County ordinance might be the provision of section 4, subsection e, which allows livestock to he kept on parcels within the R-l zone of five acres or more yet denying such use to smaller parcels. It could not be argued that this creates a lack of uniformity of regulation within the zone in the sense intended by section 65852, Government Code. The cited example is typical of many' similar provisions in all zoning ordinances and illustrates the impossibility of there being
 
 *769
 
 absolute uniformity throughout each zone as to the permitted uses of each and every square foot of land. We conclude that section 15.10 of the San Bernardino County ordinance is not in violation of section 65852, Government Code, and therefore is a proper zoning provision and within the powers of the board of supervisors to enact.
 

 Affirmed.
 

 McCabe, P. J., and Kerrigan, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied January 3, 1968.
 

 *
 

 Assigned by the Chairman of the Judicial Council.