[Civ. No. 11322. Fourth Dist., Div. One. Feb. 2, 1973.]

W. J. BOHANNAN, Plaintiff and Appellant, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

## COUNSEL

Johnson & Midlam and Kevin Midlam for Plaintiff and Appellant.

John W. Witt, City Attorney, and C. Alan Sumption, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**COUGHLIN, J.**[*]—Plaintiff appeals from a judgment in a declaratory relief action rejecting his claim a zoning ordinance is invalid.

On June 30, 1971, the City Council of San Diego adopted Ordinance No. 10608 (new series) entitled "Old San Diego Planning District," referred to hereinafter as "the Ordinance," which repealed and, in effect, re-enacted Ordinance No. 9511 (new series) described as "Old San Diego Architectural Control District Ordinance," adopted September 27, 1966. Both ordinances, in substance, are zoning ordinances regulating the architectural design of buildings and signs within public view, in an area surrounding a state park known as "Old Town." The zoned area, as well as the state park, is the site of the original settlement in San Diego; is of historical significance as the birth place of California; and is the locale of many structures built before 1871.

The purpose of the ordinance is to preserve and enhance the cultural and historical aspects of Old Town for the benefit of the general public. To effect this purpose the ordinance specifies boundaries of an architecturally controlled district; creates an architectural control board; requires approval by the board of an application for a permit to construct any new building, to alter, improve or repair such, or to use commercial signs and signboards in the area; prescribes the general standards governing issuance of permits under which the buildings and signs licensed would conform in appearance to those built and used in the area prior to 1871, citing as examples designated historical buildings in the area; provides for a review of the decisions of the board by the city council; does not require any change of existing buildings; but does require all signs to conform and directs removal of those not conforming on the expiration of three years from the effective date of the ordinance.

Plaintiff owns and operates a retail business in the zoned area; brings this class action on behalf of himself and others similarly affected; and contends[1] the ordinance is unconstitutional in that it violates equal protection, due process, and free speech concepts and is not a valid exercise of the police power because (1) the area of the control district is larger than reasonably

---

[*]Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]We state plaintiff's contentions as set forth in his opening brief.

necessary to protect and preserve the historical and cultural value of Old Town; (2) the ordinance provides for the taking of private property without compensation; (3) the provisions regulating signs create an arbitrary and unreasonable classification; (4) the authority vested in the architectural control board constitutes an invalid delegation of legislative power to an administrative body; and (5) the amortization period for existing signs is unreasonable.

Plaintiff's contention the control district, allegedly consisting of 230 acres, is larger than reasonably necessary to protect the historical sites in Old Town, is premised on the claim the authority to protect them is derived from Government Code section 37361 which limits control measures in the area to neighboring private property, and upon the further claim many of the buildings affected by the ordinance are not "neighboring" to any historical site. Government Code section 37361 authorizes the city council to provide for *places,* buildings and structures having a special historical aesthetic interest or value and to provide "special conditions or regulations for their protection, enhancement, perpetuation or use, which may include appropriate and reasonable control of the use or appearance of neighboring private property within public view or both."

Plaintiff's claim the control district consists of 230 acres is premised on a map which includes the area within the state park. This area is excluded from the district. There are 26 recognized historical sites within the district. Whether other property in the district is "neighboring property" within the meaning of Government Code section 37361 is a question of fact determinable in light of their location and the purpose of the ordinance. "Neighboring property" is property in the neighborhood. The neighborhood includes the general area nearby, and is not confined to adjoining property. The boundaries of the district are within the boundaries of "Old Town" as delineated on an 1870 map entitled "Plan of San Diego." Old Town is the neighborhood; is not just a number of separate historical sites, but the general area within which those sites are located; and is the area which as a whole is of historical significance, exemplified by the architecture of the buildings on particular sites within it.

The city council is authorized to determine the boundaries of the area subject to control, and the court should not interfere with its determination absent a clear showing of abuse of its authority. (Gen. see *Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 532-533 [20 Cal.Rptr. 638, 370 P.2d 342]; *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 339 [175 P.2d 542]; *Miller* v. *Board of Public Works,* 195 Cal. 477,

495 [234 P. 381, 38 A.L.R. 1479].) ▅▅▅ The implied finding of the trial court there is no showing of abuse, is supported by the record.[2]

As presented in his brief on appeal plaintiff's attack upon the size of the control district encompasses an attack upon the purpose of the ordinance as a valid exercise of the police power; relies upon principles pertinent in determining the validity of zoning laws; and claims the purpose of the ordinance is aesthetic which is not a proper objective of the police power, citing *Varney & Green* v. *Williams,* 155 Cal. 318, 320 [100 P. 867] and similar cases.

▅▅▅ The police power extends to measures designed to promote the public convenience and the general prosperity (*Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446, 460 [55 P.2d 177]; see also *Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 485).

▅▅▅ The trial court found the "purpose of the ordinance as shown by the evidence falls within the meaning of 'general welfare' of the public." This finding is supported by the record. Preservation of the image of Old Town as it existed prior to 1871, as reflected in the historical buildings in the area, as a visual story of the beginning of San Diego and as an educational exhibit of the birth place of California, contributes to the general welfare; gives the general public attendant educational and cultural advantages; and by its encouragement of tourism is of general economic value. The purpose of the ordinance clearly is within an exercise of the police power under the principles stated and applied in *Queenside Hills Realty Co.* v. *Saxl,* 328 U.S. 80, 83 [90 L.Ed. 1096, 1098, 66 S.Ct. 850]; *Nebbia* v. *New York,* 291 U.S. 502 [78 L.Ed. 940, 54 S.Ct. 505, 89 A.L.R. 1469]; *Consolidated Rock Products Co.* v. *City of Los Angeles, supra,* 57 Cal.2d 515, 522; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 460, 462 [202 P.2d 38, 7 A.L.R.2d 990]; *Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 484 et seq.; *Desert Outdoor Advertising, Inc.* v. *County of San Bernardino,* 255 Cal. App.2d 765, 768-770 [63 Cal.Rptr. 543]; *County of Santa Barbara* v. *Purcell, Inc.,* 251 Cal.App.2d 169, 173 [59 Cal.Rptr. 345] and *Metromedia, Inc.* v. *City of Pasadena,* 216 Cal.App.2d 270, 273 [30 Cal.Rptr. 731].

▅▅▅ Plaintiff's contention the ordinance provides for the taking of property without compensation in violation of the Constitution is directed to the effect of the provision allegedly requiring the use of materials and architec-

[2]Defendant contends it had authority under the police power to enact the ordinance and, for this reason, the authority conferred by Government Code section 37361, apparently limited to the control of "neighboring property," is not exclusive. In light of the implied finding the control area consists of "neighboring property," we need not discuss this further contention.

tural styles in remodeling or repairing existing structures "as were used and existed prior to 1871";[3] and those prescribing the size, location and content of signs.

As to buildings in the area plaintiff contends the practical effect of the ordinance is to render them valueless or substantially reduce their value without compensation. The ordinance does not require the use of such materials and styles "as were used and existed prior to 1871." Instead, it prescribes the use of materials and styles "in general accord with the appearance of the structures built in Old San Diego prior to 1871." There is no showing compliance with the provision imposing style requirements upon remodeling or repairing existing buildings in practical effect would render them valueless or substantially less valuable.

As to signs in the area plaintiff makes a similar contention, claiming regulation of their size, location, content and composition deprives their owners of the right to advertise. It is obvious the provision in question does not deprive property owners in the area of the right to use signs; instead, it regulates and restricts that use for the purpose of preserving the historical atmosphere of the area which, for the reasons heretofore stated, is a proper exercise of the police power.

Regulations regarding and restrictions upon the use of property in an exercise of the police power for an authorized purpose, do not constitute the taking of property without compensation or give rise to constitutional cause for complaint. (*Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453. 466-467; *Wilkins* v. *City of San Bernardino, supra,* 29 Cal.2d 332. 338; *Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 488.)

Plaintiff's contention the provision of the ordinance regulating signs creates a constitutionally proscribed arbitrary and unreasonable classification, relates to the distinction between signs "for businesses existing prior to 1871 and those for businesses not existing prior to 1871"; is directed particularly to a provision prescribing the maximum size for signs and permitting a larger sign where it is shown such a sign was in use during the pre-1871 period; and relies on the decision in *City of Santa Barbara* v. *Modern Neon Sign Co.,* 189 Cal.App.2d 188 [11 Cal.Rptr. 57], which states the applicable general rule, but is factually distinguishable from the case at bench.

The purpose of the sign provision is to maintain the historical atmosphere of the area; and the distinction between the types of signs used during the pre-1871 period and those used during subsequent periods is reasonably re-

---

[3]The quotation is from plaintiff's brief on appeal.

lated to this purpose. All signs in the area are subject to the regulation. The classification to which plaintiff objects complies with the constitutional requirements stated in the decision upon which he relies.

■ The ordinance creates a board with power to insure compliance with the regulations it prescribes; to adopt, after approval by the city council, architectural criteria and standards to be used in evaluating the appropriateness of any development for which a permit is requested; and to grant or deny the permit. Architectural requirements for structures are governed by the general requirement they "shall be in general accord with the appearance of the structures built in Old San Diego prior to 1871" and with the "designs prevailing during the principal recognized Old San Diego Historical periods, commonly known as the Spanish period, Mexican period and American period" as exemplified by, but not limited to, specifically designated structures in the area. The criteria to be used in evaluating the appropriateness of forms, materials, textures, colors and height of structures and landscaping "which had been previously approved by resolution of the city council," is incorporated as part of the ordinance. The criteria to be used in evaluating the appropriateness of the structure, content, lettering, location, size, number, illumination, color, projection and other characteristics of signs, previously approved by resolution of the city council in 1968, also is incorporated in the ordinance. The board is authorized to make changes or additions to these criteria, but any such changes and additions first must be approved by the city council.

Plaintiff contends the requirements and criteria for approval are so vague and ambiguous as to permit arbitrary action by the board in passing upon proposed construction plans; and for this reason, the ordinance constitutes an invalid delegation of legislative power to the administrative agency.

In *Kugler* v. *Yocum,* 69 Cal.2d 371, 375-376 [71 Cal.Rptr. 687, 445 P.2d 303], the Supreme Court said: "[L]egislative power may properly be delegated if channeled by a sufficient standard. . . .

" 'The essentials of the legislative function are the determination and formulation of the legislative policy. Generally speaking, attainment of the ends, including how and by what means they are to be achieved, may constitutionally be left in the hands of others. The Legislature may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the "power to fill up the details" by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect . . . .' [Citation.]

"[T]he purpose of the doctrine that legislative power cannot be delegated is to assure that 'truly fundamental issues [will] be resolved by the Legis-

lature' and that a 'grant of authority [is] . . . accompanied by safeguards adequate to prevent its abuse.' "

The grant of authority by the ordinance to the board provides adequate safeguards; the criteria for evaluation of the appropriateness of structures and signs satisfies constitutional requirements (*Duskin* v. *State Board of Dry Cleaners,* 58 Cal.2d 155, 160 [23 Cal.Rptr. 404, 373 P.2d 468]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control,* 57 Cal.2d 749, 760 [22 Cal.Rptr. 14, 371 P.2d 758]); minutely designated standards are not required (*Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control, supra*); any changes in or additions to the criteria by the board first must be approved by the city council; and the decision of the board approving or disapproving the application for a permit is subject to review by the council which may affirm, modify or reverse the decision. The ordinance does not invalidly delegate legislative authority to the board.

Plaintiff directs attention to a provision in the resolution approving the criteria for signs, which was incorporated in the ordinance by reference, that board approval of signs shall be given only when the signs conform to the requirements of the criteria and also "conform in appearance, size, position and design to the quaint and distinctive character of Old San Diego District, and do not injuriously affect the same"; and contends this provision nullifies any specific or definite standards found elsewhere in the rules and regulations set forth in the resolution. The contention is without merit. A sufficiently ascertainable standard is prescribed. (Gen. see *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 57 Cal.2d 749, 760.) Furthermore, as noted, a right of review by the council furnishes an adequate safeguard.

The ordinance decrees elimination of nonconforming signs in the area and prescribes a three-year amortization period which plaintiff contends is unreasonable. In support of this contention he directs attention only to two signs in the area, i.e., Shell Oil Company service station signs, which he claims represent an investment of $9,533 and have a life span of 16½ years. There was evidence the cost of the signs, poles and installation in 1967 was $9,533. The only evidence of "life span" was testimony the accounting department of the owner "allows" a life span of 16½ years for signs of this type. The court found as to these signs the evidence "is not sufficient to show the three-year period of amortization is unreasonable." Among other things, the signs were removable to other locations; one of them had been used before; and it may be inferred the poles also could be used elsewhere. There was no evidence upon which to base a finding of the loss, if any, the owner would sustain in removing the signs to another lo-

cation. Furthermore, plaintiff had the burden of proving the amortization period was unreasonable (*National Advertising Co.* v. *County of Monterey*, 211 Cal.App.2d 375, 381 [27 Cal.Rptr. 136]); and the lack of credible evidence on the issue supports a finding it was reasonable. Whether an amortization period is reasonable depends upon the particular property in use in issue and each case must be determined on its own facts (*National Advertising Co.* v. *County of Monterey*, 1 Cal.3d 875, 879 [83 Cal.Rptr. 577, 464 P.2d 33]). In any event the fact the amortization period may be unreasonable as to a particular property does not invalidate its application to other property or invalidate the ordinance of which it is a part.

Plaintiff's contention the ordinance violates free speech concepts is not supported by any argument or citations; apparently refers to the limitations placed on the design, size, content and location of signs permitted in the area. The limitations in question do not constitute a denial of the right to advertise as a concomitant of the constitutional guarantee of freedom of speech, but is a permissible regulation in the exercise of the police power (Gen. see *In re Porterfield,* 28 Cal.2d 91, 101-102 [168 P.2d 706, 167 A.L.R. 675]). Signs are subject to zoning regulations. (*Desert Outdoor Advertising, Inc.* v. *County of San Bernardino, supra,* 255 Cal.App.2d 765; *County of Santa Barbara* v. *Purcell, Inc., supra,* 251 Cal.App.2d 169, 172; *National Advertising Co.* v. *County of Monterey, supra,* 211 Cal.App.2d 375.)

The judgment is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 29, 1973.