[Civ. No. 28033. Second Dist., Div. Four. Sept. 15, 1964.]

ROBERT BURK et al., Plaintiffs and Appellants, v. THE MUNICIPAL COURT FOR THE WHITTIER JUDICIAL DISTRICT OF LOS ANGELES COUNTY, Defendant and Respondent; CITY OF WHITTIER, Real Party in Interest.

Robert A. Von Esch, Jr., for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Thomas W. Bewley, City Attorney, Martin E. Whelan, Jr., Assistant City Attorney, and Bewley, Knoop, Lassleben & Whelan for Real Party in Interest.

BURKE, P. J.—Petitioner Burk was charged in respondent municipal court with a violation of section 4260.75, Whittier Municipal Code, and section 1200, Whittier Municipal Code, in that he "did willfully and unlawfully erect and maintain a sign for advertising and display purposes upon real property, zoned R-3, and located at 224 North Greenleaf Ave. in the City of Whittier which sign did contain the words 'For Sale' and did refer to Bob Burke Reality [*sic*], which firm was not the owner of said real property and said sign was not a name sign or an identification sign or an open house sign nor was said real property a lot for sale or lease in a new tract or new subdivision."

Petitioner Yatsko was similarly charged, the only difference being the location of the property and the name (Western Realty Company) of the real estate broker involved. Their demurrers were overruled, whereupon they instituted the present proceeding seeking a writ of prohibition against further prosecution. The writ was denied and they have appealed to this court.[1]

The pertinent parts of section 4260.75,[2] which petitioners are alleged to have violated, read as follows:

"SECTION 4260.75—ADVERTISING SIGNS PROHIBITED ON CERTAIN PREMISES.

"a. For the purposes of this Section, the word 'sign' is hereby defined to mean any structure, and all parts composing

---

[1] No point is raised as to the propriety of the joinder of the two defendants in separate criminal proceedings in this single superior court action. Since an objection to misjoinder must be taken by special demurrer, we deem it waived.

[2] Section 1200 of the Whittier Municipal Code, also referred to in the criminal complaint, is a general section making violations of the zoning ordinances a misdemeanor.

the same, together with the frame, background or supports therefor which is used for advertising or display purposes, or any statuary, sculpture, molding or casting used for advertising or display purposes, or any flags, bunting or material used for display or advertising purposes, including, but not limited to, placards, cards, structures or areas carrying the following or similar words: 'For Rent,' 'For Sale,' 'For Lease,' 'Open House,' 'New House,' 'Home Inspection,' 'Visitors Invited,' 'Installed by' or 'Built by.'

"b. No sign or signs shall be erected or maintained upon any real property in the City of Whittier zoned R-1, R-2, R-3, R-R, or P, as defined and set forth in article IX entitled 'Zoning and Planning,' chapter I, part I of the Whittier Municipal Code, except that an unlighted non-electric sign shall be permitted on any lot within said zoning classification as follows:

"1. A name or identification sign not exceeding four (4) square feet in area shall be permitted on any building, lot or parcel of land so zoned as above set forth.

"2. One sign not exceeding four (4) square feet in area shall be permitted on each lot or parcel of real property located in such zoned areas to advertise the leasing, rental or sale of said lot or parcel of real property, but only by the owner of such lot or parcel of real property. Such sign may have printed or painted thereon the name, address and telephone number of the owner of said lot or parcel of real property, and such sign shall not have printed or shown thereon the name, address, telephone number or any other description or identification of any person, firm or corporation other than the owner of said lot or parcel of real property.

"Open House signs not exceeding four (4) square feet in area, which signs invite the general public to inspect premises for sale or lease, shall be permitted to be displayed, on improved real property, providing that at the time said property is open for inspection and the open house sign is displayed, the owner, his tenant, or his agent is in attendance and present on said property to display any such house or building thereon. Said open house sign shall only be displayed on or from the property being sold or leased.

"3. Signs not exceeding an aggregate size of four (4) square feet surface area for each lot for sale or lease in a new tract or subdivision, advertising the sale of either the lots or houses in a new subdivision or tract of homes, shall be permitted during the initial period of the development of said

project by the subdivider, builder or an agent of either, which period shall be and is hereby defined as beginning with the recording date of the subdivision tract map and terminating twelve (12) months thereafter.

"If the owner, developer or selling agent of the owner of any such subdivision, certifies under oath that at least ninety (90%) per cent of the lots in any such subdivision remain unsold or leased, at the end of said twelve (12) month period, then upon the verified written application therefor, the City Clerk may extend the period for the display of said subdivision signs for such additional period as the City Clerk deems advisable."

Petitioners contend that the ordinance is unconstitutional on the following grounds:

1. Lack of facts in the record or of which the court may take judicial notice justifying the use of police power in adopting the ordinance.

2. The ordinance regulates mere esthetic qualities and is not a proper exercise of the police power.

3. The ordinance is discriminatory by failing to apply to a generally defined class.

4. The ordinance attempts to regulate in a field that has been preempted by general law.

We approach the problem with certain well established principles in mind. ▮ Municipal ordinances are presumed to be constitutional if any rational consideration supports their enactment. (*Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 P. 388], affd., 274 U.S. 325 [47 S.Ct. 594, 71 L.Ed. 1074]; *Miller* v. *Board of Public Works,* 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479].) ▮ If any rational motive exists for the exercise of the police power, the motive for its exercise becomes immaterial and not a proper subject of inquiry and the court will not substitute its judgment for that of the legislative body. (*Simpson* v. *City of Los Angeles,* 4 Cal.2d 60, 65 [47 P.2d 474]; *Stahm* v. *Klein,* 179 Cal.App. 2d 512, 518-520 [4 Cal.Rptr. 137].) ▮ As the court said in *National Advertising Co.* v. *County of Monterey,* 211 Cal. App.2d 375, 377-378 [27 Cal.Rptr. 136]:

"Whether the regulation is arbitrary or unreasonable must be determined under the established rules governing judicial review of exercises of the police power. That power is elastic, and capable of expansion to meet existing conditions of modern life (*Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342]).

■ '[D]etermination of the necessity and form of such regulations . . . is primarily a legislative and not a judicial function' (*id.* at p. 522). If the necessity or propriety of a zoning regulation is a question upon which reasonable minds might differ (*Miller* v. *Board of Public Works,* 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479]) or is fairly debatable (*Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 462 [202 P.2d 38, 7 A.L.R.2d 990]), the legislative determination will not be disturbed. Thus we must determine whether the board of supervisors, in adopting section 12, may have had in mind considerations supporting the legislation which are fairly debatable or upon which reasonable minds may differ.''

■ In the light of these rules, we entertain no doubt as to the constitutionality of a municipal ordinance which prohibits all commercial signs in a residential neighborhood. In *Kort* v. *City of Los Angeles,* 52 Cal.App.2d 804, 808-809 [127 P.2d 66], in rejecting the protest of a public accountant against a city ordinance which prohibited his advertising his business by a sign in front of his residence, the court said:

''It may be conceded that plaintiff's business is not one the conduct of which is subject to regulation by the city in the exercise of the police power, and that the ordinance would be invalid if its only purpose was to prohibit the practice of public accountancy in certain districts of the city, while permitting it in others. But the ordinance cannot be dissected and considered as a multitude of ordinances having no relation to the general scheme of zoning. The authority which the city exercises in adopting a general zoning ordinance is not the same one that it exercises in placing restrictions upon certain types of business because they are actual or potential nuisances, the latter power being one which was commonly used, before city planning became an established practice, in confining to certain districts businesses which were in themselves detrimental to the public safety, morals, health or general welfare. It is not a ground of invalidity of the ordinance that plaintiff's business is, as the court found, 'lawful, innocent, inoffensive and dignified,' for if restrictions on business uses of property could be invalidated upon that ground there could be no such thing as comprehensive city planning.''

In *General Outdoor Advertising Co.* v. *Department of Public Works,* 289 Mass. 149, 196 [193 N.E. 799], an ordinance excluding signboards from residential blocks was upheld. (See Note in 156 A.L.R. 581, 586.) Nor does an

ordinance become unconstitutional merely because esthetic consideration may play some part in the motivation for its enactment. In *Metromedia, Inc.* v. *City of Pasadena,* 216 Cal. App.2d 270, 273 [30 Cal.Rptr. 731], the court said: "Today, economic and aesthetic considerations together constitute the nearly inseparable warp and woof of the fabric upon which the modern city must design its future."

Likewise, in *Town of Lexington* v. *Govenar,* 295 Mass. 31 [3 N.E.2d 19], where it was held that a prohibition by zoning regulation of the erection of professional signs did not violate the rights of an attorney residing in a residential district, the court said: "Doubtless esthetic considerations play a large part in determining that advertising signs should not be permitted in such an area—these would seem sufficient to exclude such a use. The beauty of a residential neighborhood is for the comfort and happiness of the residents and it tends to sustain the value of property in the neighborhood. It is a matter of general welfare, like other conditions that add to the attractiveness of a community and the value of residences there located."

 The exceptions permitted under the ordinance are reasonable and nondiscriminatory. The first, permitting a name or identification sign of limited size, applies equally to all. The second, permitting the property owner to erect a sign of limited size advertising the leasing, rental or sale of the property on which it is erected, is proper in order that the broad purposes of the ordinance may not unduly restrict the renting or sale of property.

 The prohibition against the erection of "for rent" or "for sale" signs by real estate brokers, who would place on the sign the name of their realty companies and either telephone numbers, addresses, or both, is a reasonable restriction, since the use of such signs has the secondary effect of advertising the commercial enterprise of the particular broker. The display of a "for sale" sign by an owner is not the advertising of a real estate business but simply a notice that his property is for sale, while the same display by a realtor not only advertises that the property is for sale, but also advertises the fact that the realtor is engaged in the commercial real estate business and at a certain location elsewhere. Thus, the broker is advertising his commercial business and his office location in a residential zone. It is this aspect which justifies the city council in excluding realtor signs from residential zones, just as are all other signs advertising that

any person is engaged therein or elsewhere in any business or profession.

The point is made that the placing of the name of a real estate broker on such a sign is no less esthetic than the name of a particular property owner. Esthetic considerations are only a part of the basic objects and purposes of a comprehensive zoning ordinance, and the more important consideration is that of preserving the basic character of a residential neighborhood for residential purposes. The intent of the sign regulation is to prevent the advertising of commercial enterprises within the residential zones.

The ordinance does not restrict the use of agents by owners in the leasing or selling of their property. The advertising of the property at the broker's office and through newspapers and other media is not affected. Also, the broker may be active on the property itself. In the third exception to the sign regulation, for example, permission is given for "open house" signs, and the regulation recognizes that the owner may delegate to his agent the showing of the property in response to such signs. There is no restriction against an owner referring all calls or inquiries received from a sign placed on his premises to his broker or agent. While, admittedly, restricting an owner, particularly an absentee owner, from placing his broker's sign upon his property may cause such owner some inconvenience, no doubt the legislative body weighed such an inconvenience against the general detriment accruing to a residential community from signs advertising that persons are engaged in the real estate, or other, business or profession.[3]

While reasonable minds might differ as to whether or not such incidental commercial advertising as the erection of such signs by real estate brokers would entail is sufficient to merit their exclusion, such consideration is for the sound discretion of the legislative body and not for the reviewing court, as the authorities cited have held. In all regulations where exceptions are made a part of a prohibitory regulation, lines of demarcation must be drawn at some point. If the exceptions to the sign regulation ordinance were to be broad-

---

[3]The case before us does not involve, and therefore we do not consider, the validity of the ordinance if applied to prevent an owner from listing on a "for sale" sign the name of a representative where the effect is not to advertise a commercial enterprise but merely to identify some friend, relative or similar source of contact. Nor do we consider the meaning of the term "owner" as applied to probate, foreclosure and similar specialized sales.

ened to permit one or more types of commercial activity to be advertised in a residential zone, it would become increasingly more difficult to justify the exclusion of others. Neither the legislative body, by direct legislation, nor the people of the community, through the exercise of the initiative or referendum, have seen fit to so extend the exceptions. Absent an unlawful discrimination or classification, it is not for the courts to substitute their judgment for that of the legislative body or the people of the community. The legislative body is free to recognize degrees of harm to the common good which result from certain conduct, and it may confine its restrictions to those classes of cases where it deems the need to be clearest. (*People* v. *Philbin,* 50 Cal.App.2d Supp. 859 [123 P.2d 159].) A law providing general regulations is not unconstitutional merely because compliance with such regulations subjects certain persons, by reason of their situation, to greater inconvenience or expense than others differently situated. (*Glucose Refining Co.* v. *City of Chicago* (*C.C.N.D.Ill.* 1905) 138 F. 209.) If the regulation is reasonable it is not arbitrary.

 As applied to petitioners herein, Whittier Municipal Code section 4260.75 is valid as a lawful exercise of the police power of cities to zone property within the city, to protect residential property from the encroachment of commercial activities and to prohibit the advertising of such commercial activities in residential areas.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.