[Civ. No. 9833. Fourth Dist., Div. Two. Jan. 26, 1971.]

MARY CARLIN et al., Plaintiffs and Appellants, v.
CITY OF PALM SPRINGS et al., Defendants and Respondents.

## COUNSEL

Reid, Babbage & Coil, Enos C. Reid and Donald F. Powell for Plaintiffs and Appellants.

Fred R. Metheny, City Attorney, and Raymond E. Ott, Deputy City Attorney for Defendants and Respondents.

## OPINION

**KERRIGAN, J.**—Plaintiffs have owned and operated a small hotel in Palm Springs for many years. They have done business under the fictitious name of "650 Hotel"[1] since 1956. In 1967 the City Council of Palm Springs adopted a comprehensive sign ordinance. One of the provisions of the ordinance prohibits, in effect, the use of an outside business sign that makes reference to prices or rates. Under the ordinance "rate signs" are deemed to be public nuisances *per se*.

Several years prior to the enactment of the ordinance, the plaintiffs attached to the main entrance of their hotel, fronting on North Palm Canyon

---

[1]The hotel was also known at one time as "El Tram" but that designation is immaterial insofar as it relates to any issue on appeal.

Drive, a permanent sign displaying the official name of the business as "6⁵⁰ Hotel." Subsequent to the adoption of the sign ordinance, the city officials responsible for enforcement of the ordinance determined that plaintiffs' sign was a "rate sign" and ordered its removal.

Plaintiffs appealed unsuccessfully to the council for relief from the removal order. Following the exhaustion of their administrative remedies, they filed an action for injunction and declaratory relief against the city and several officers and department heads thereof. The purpose of the action was to secure a judicial declaration that the sign ordinance was unconstitutional to the extent that it prohibited rate signs, and to enjoin its enforcement insofar as it applied to plaintiffs' business sign.

During the course of the trial, appraisers, architects, businessmen and planning officials testified on behalf of the city. The substance of their testimony was that aesthetics are of essential importance to a community; that rate signs are detrimental to aesthetics; that aesthetic values cannot be separated from economic factors; that rate signs tend to proliferate, if permitted, and proliferation would adversely affect the quality of the civic environment and the city's attraction to tourists; that rate signs tend to be deceptive and smack of cut-throat competition and overcommercialization.

Plaintiffs called a formidable number of witnesses, including the former Planning Director of Riverside County. The essence of their testimony was that there was no connection between "rate signs" and the general welfare of the community; that a permanent, attractive rate sign, from an aesthetic viewpoint, is no more detrimental to the general welfare of the community than a nonrate sign; that prior to the enactment of the ordinance, there were only a few businesses which advertised rates or prices; that plaintiffs never misrepresented their rates at any time.

Following a lengthy trial, the court found, in substance, that the city of Palm Springs is a desert resort; that being tourist-oriented, the use of advertising signs has a direct bearing on the economic and aesthetic well-being of the community and, consequently, the general welfare of the community; that rate signs give rise to false advertising and hard-core commercialization which have a detrimental impact on the general welfare of the city; that a separate classification of rate signs is reasonable; that plaintiffs' business sign is a rate sign and is therefore violative of the ordinance. The court concluded the Palm Springs sign ordinance to be constitutional and enforceable against the plaintiffs, and entered judgment accordingly.[2]

---

[2]This court issued a writ of supersedeas restraining the city and the officials thereof from removing or threatening to remove plaintiffs' business sign pending the determination of this appeal.

While plaintiffs' assault on the judgment is stated in varying ways, the crucial issue on appeal is whether the ordinance is unconstitutional as being violative of equal protection and free speech concepts or whether it represents a valid exercise of the police power.

This is a case of first impression in this state. It presents a clear conflict between an individual's right to conduct a business and to advertise his business as opposed to a municipality's right to exercise its police powers. The essence of the sign ordinance, as it relates to this action, is that it prohibits hotels and other business establishments from employing what has been commonly designated as a "rate sign."

In order to resolve the case on the merits, it will be necessary to review the ordinance insofar as it pertains to rates or prices, the existing California authorities governing the regulation of signs, and foreign case law on the specific subject of rate signs.

The relevant sections of the Palm Springs Sign Ordinance provide as follows:[3]

"8110. PURPOSE. The purpose of this Ordinance is to alleviate a growth of sign usage which is detrimental to Palm Springs. Recognizing that Palm Springs is one of the country's foremost desert resorts, this Council finds that the improper control of signs causes a particular problem here . . . The visitor's and investor's impression of Palm Springs determines the success or failure of our economic future . . . [W]e are of the opinion that economic and aesthetic factors are inseparable . . . In analyzing the effect of sign use in Palm Springs, we find and conclude that, first, many existing signs are visually incompatible with their surroundings, landscaping and architecture . . . Second, we find and conclude that a clutter and disarray of signs have sprung up in Palm Springs . . . It gives rise to a weed patch appearance completely out of line with our recognized and desired image . . . Third, keeping in mind the right of an individual to commercially advertise by a sign, we seek a better balance between the right to so advertise and the right of visitors and residents to be protected against a visual and public trumpeting of prices and other such overbearing commercialism . . . Degrading signs can downgrade a community, depreciate economic and social values, and turn away investors and visitors . . . Although it may, at first, seem hard to conclude that rate signs are more pernicious, either individually or as a class, than other kinds of signs, we find they are for a number of valid

[3]Palm Springs Ordinance No. 776, adopted February 14, 1967, chapter 81, articles 810-818.

reasons. Therefore, rate signs must be separately classified and are hereby declared to be public nuisances *per se*.

". . . . . . . . . . . . . . ". . . . .

"8140.03. SIGNS NOT ADVERTISING THE USE, NAME OF THE OWNER, PRODUCTS OR SERVICE AVAILABLE ON THE PREMISES PROHIBITED. Any sign which does not advertise, without reference to prices, a use being made on the premises, the name of the owner, or user, or which does not advertise a product, an interest, service or entertainment available on the premises shall be prohibited. . . ."

A removal and amortization period is provided by the ordinance, dependent upon the permit value of the sign. (§ 8180.04.) For example, a $10 sign is to be removed or corrected immediately; a sign valued at more than $5,000 is removable or must be brought up to code requirements within 10 years. Enforcement powers are granted the Director of Planning and Development. (§ 8180.01.) Signs in violation of the ordinance are declared to be public nuisances and may be abated. (§ 8180.03.) Any person determined to be in willful violation of the ordinance may be found guilty of a misdemeanor, punishable by a $500 fine or by imprisonment for a period of six months, or both. (§ 8180.06.)

The ordinance does not absolutely proscribe the posting or advertising of hotel and motel rates. While it prohibits outside rate signs, it permits a limited posting of rates of accommodations in the interior of hotels; such rates may be indicated by a single sign or attraction board not to exceed 18 inches by 24 inches located no closer than one foot to the inside of a window when facing public view, in letters and numbers not to exceed ¾ inches in height. (§ 8152.09.)

■ The Constitution expressly confers on cities and towns the power to make and enforce within their limits all such "local, police, sanitary and other regulations as are not in conflict with general laws." (Cal. Const., art. XI, § 11.) The power thus delegated to municipalities is as broad as that of the Legislature itself, providing the power is exercised within the confines of the city and is not in conflict with the state's general laws. (*People* v. *Taylor,* 33 Cal.App.2d Supp. 760, 761 [85 P.2d 978].)

■ In the exercise of its police power, the city has broad discretion in determining what is reasonable in endeavoring to protect the public health, safety, morals, and general welfare. (*McKay Jewelers, Inc.* v. *Bowron,* 19 Cal.2d 595, 600 [122 P.2d 543, 139 A.L.R. 1188].) The test as to whether a law enacted pursuant to the police power is arbitrary and discriminatory in its conception and application is whether it has any reasonable tendency to promote the public health, morals, safety or general welfare of the com-

712

munity. (*Miller* v. *Board of Public Works,* 195 Cal. 477, 484 [234 P. 381, 38 A.L.R. 1479].) Stated in another fashion, the ordinance must be reasonable in object and not arbitrary in operation. (See *McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 885 [264 P.2d 932].)

■ The reasonable regulation of signs and billboards constitutes a valid exercise of the police power. (*National Advertising Co.* v. *County of Monterey,* 211 Cal.App.2d 375 [27 Cal.Rptr. 136]; *Metromedia, Inc.* v. *City of Pasadena,* 216 Cal.App.2d 270 [30 Cal.Rptr. 731]; *Burk* v. *Municipal Court,* 229 Cal.App.2d 696 [40 Cal.Rptr. 425]; *City of Los Angeles* v. *Barrett,* 153 Cal.App.2d 776 [315 P.2d 503]; see Gov. Code, § 38774.)
■ The size, location, and other physical attributes of signs may be regulated in the interest of public safety. (See 7 McQuillan, Municipal Corporations (1968 rev. vol.), § 24.384, pp. 333-335.) The number of signs which may be posted, affixed or installed by a landowner or occupier may be limited. (See *State* v. *Hobson,* 46 Del. 381 [83 A.2d 846, 854, 858].) Signs that overhang or encroach upon a public highway or public property may be restricted or prohibited. (*McMahan's Furniture Co.* v. *City of Pacific Grove,* 219 Cal.App.2d 732, 735 [33 Cal.Rptr. 476].) Signs used to advertise prices, which may tend to deceive, are subject to the police power. (*Serve Yourself Gas etc. Assn.* v. *Brock,* 39 Cal.2d 813, 818-819 [249 P.2d 545].) Advertising on public streets through the use of the exterior of delivery vehicles for advertising of a business other than that of the vehicle owner may be regulated. (*Railway Express Agency* v. *People of the State of New York,* 336 U.S. 106 [93 L.Ed. 533, 69 S.Ct. 463].)

■ Notwithstanding the government's power to regulate signs, it is likewise true that the classification of advertising signs must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic or constitutional, which suggests a reason for, and justifies, the particular legislation. (*City of Santa Barbara* v. *Modern Neon Sign Co.,* 189 Cal.App.2d 188, 193 [11 Cal.Rptr. 57].) ■ However, there is a presumption in favor of the validity of the classification created by statute or ordinance. (*McMahan's Furniture Co.* v. *City of Pacific Grove, supra,* 219 Cal.App.2d 732, 735.) Where the validity of the legislative classification is fairly debatable, the legislative judgment must be allowed to control. (*Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342].) The burden of proof rests upon the person attacking the statute to establish that there is no public nexus between such legislation and what it attempts to correct. (*McMahan's Furniture Co.* v. *City of Pacific Grove, supra,* p. 736.)

Counterbalancing the government's right to regulate signs is the right of a property owner to make a reasonable use of his land or the right of a busi-

nessman to conduct a business. ■ The right to advertise is a property right. (*Serve Yourself Gas etc. Assn.* v. *Brock, supra,* 39 Cal.2d 813, 819.) ■ A business sign is a part of the business itself, just as the structure housing the business is part of it, and the authority to conduct a business carries with it the right to maintain a business sign on the premises, subject to reasonable regulation by the government. (*Metromedia Inc.* v. *City of Pasadena, supra,* 216 Cal.App.2d 270, 275.) The right to advertise also represents the exercise of the right of free speech. (*McKay Jewelers, Inc.* v. *Bowron, supra,* 19 Cal.2d 595, 605.) ■ The right of free speech necessarily embodies the means used for its dissemination. (*Wollam* v. *City of Palm Springs,* 59 Cal.2d 276, 284 [29 Cal.Rptr. 1, 379 P.2d 481].)

■ While no California appellate tribunal has ever been confronted with the validity of a rate sign statute, in *Viale* v. *Foley,* 76 Nev. 149 [350 P.2d 721], a Nevada regulation prohibiting rate signs for hotels and motels was held constitutional. Conversely, in *Eskind* v. *City of Vero Beach* (Fla.) 159 So.2d 209, the reviewing court was faced with the validity of a rate sign ordinance and ruled it to be unconstitutional; Vero Beach, like Palm Springs, is a tourist town; it adopted an ordinance prohibiting the advertising of rates by means of motel signs; in holding the ordinance invalid, the court determined that there was no justification from an aesthetic point to prohibit motel signs depicting rates but permitting every other type of motel advertising sign imaginable; the court further observed that the discriminatory nature of such a statute was apparent inasmuch as the motel which can offer an attractive rate is prohibited from announcing its rate advantage, while more luxurious establishments are permitted to appeal to potential customers by signs advertising inducements such as T-V, air conditioning, swimming pools, bars, grills and every other conceivable type of tourist attraction and entertainment; the ordinance was held invalid on economic grounds as well; the mere fact that rates on outdoor signs would entice travelers away from the more expensive hotels or would cause dissatisfaction on the part of persons reserving rooms in expensive hotels was deemed an insufficient ground for upholding the ordinance inasmuch as a rate ordinance which discriminates against one segment of a class of business (motels and small hotels) and is beneficial to another segment of the business (luxury hotels) cannot stand; legislation enacted under the police power must protect the general public, not just one class of citizens.

Applying the foregoing constitutional, statutory and case law to the ordinance under review, it is obvious that a rate sign cannot be classified separately from a nonrate sign on the basis of public health, safety, or morals. If there is any justification for the ordinance, it may be upheld only in that it promotes the general welfare. Simply stated, the question is whether the ordinance can be justified for economic or aesthetic reasons.

The city contends that the power to regulate rate signs may be founded on aesthetics alone. While there is California authority that the city's police power does not include the power to legislate solely on aesthetic grounds (*Varney & Green* v. *Williams*, 155 Cal. 318, 320 [100 P. 867]; see *City of Santa Barbara* v. *Modern Neon Sign Co., supra*, 189 Cal.App.2d 188, 197; see also *Burk* v. *Municipal Court, supra*, 229 Cal.App.2d 696, 701-702), it is unnecessary to decide whether the judgment can be upheld solely for reasons of good taste inasmuch as the record reflects that there is not necessarily any difference whatsoever between a business sign classified as a "rate sign" and a business sign characterized as a "nonrate sign." From an aesthetic standpoint, there is no difference between a sign which reads, "Sam's Hotel," and "Hotel 6$^{50}$," or between a sign reading, "Swim suits" and "Swim suits $5.88."

Aesthetics should be considered as a factor, together with other factors, in support of an ordinance. (See *Desert Outdoor Advertising, Inc.* v. *County of San Bernardino*, 255 Cal.App.2d 765, 769 [63 Cal.Rptr. 543]; see also *County of Santa Barbara* v. *Purcell, Inc.*, 251 Cal.App.2d 169, 173 [59 Cal.Rptr. 345].) The trial court herein found that the economic and commercial well-being of the city is directly connected with the good appearance of the community. (See *County of Santa Barbara* v. *Purcell, supra*.) The city contends that its prohibition against rate signs is supportable in that rate signs create an atmosphere of "bargain basement commercialism" inimical to the general welfare of a resort community, and that economics and aesthetics are mutually supporting factors.

The argument is not persuasive. In effect, the city maintains that for all scenic, tourist-oriented communities, aesthetics and economics are, in reality, one and the same, since any aesthetic blight is economically injurious. While the two concepts are virtually inseparable, we cannot perceive, as previously indicated, any aesthetic difference between a sign reading, "Sam's Hotel" and "Hotel 6$^{50}$." Moreover, a sign advertising rates is not aesthetically distinguishable from a sign advertising various aspects of a motel's services or or conveniences. (*Eskind* v. *City of Vero Beach* (Fla.) *supra*, 159 So.2d 209, 211.) There is no natural, intrinsic, or constitutional distinction permitting the classification of rate and nonrate signs. (*See City of Santa Barbara* v. *Modern Neon Sign Co., supra*, 189 Cal.App.2d 188, 193.) A rate sign is ugly only in the eye of a competitor. The ordinance in question creates an invalid classification under the guise of aesthetics.

The city argues that under its ordinance the posting of rates by a hotel owner is not prohibited but is merely regulated as the ordinance permits a hotel owner to post his rates inside the building. The same argument has been made and rejected before. In *People* v. *Osborne*, 17 Cal.App.2d

Supp. 771 [59 P.2d 1083], a municipal ordinance prohibited barbers from displaying a rate sign visible from outside the shop; in striking down the ordinance as unconstitutional, the court indicated that "the only apparent purpose of such provision is to make it necessary for a prospective customer to advance so far within the portals . . . , before learning the prices to be charged him therein for the work he desires, as to discourage him from a departure should those prices seem to him more than he should pay." (P. 776.)

Nor can the ordinance under review be justified on the basis that such signs are necessarily deceptive or fraudulent in nature. The uncontradicted evidence before the trial court reflects that misrepresentation of prices or false advertising of rates were not issues in the case. While one of the plaintiffs testified to the effect that all of the rooms in their hotel were not priced at the rate of $6.50, the evidence is conclusive that several rooms were available for the advertised amount. No complaints had ever been received that any of the parties before the trial court had ever engaged in misleading or deceptive advertising. While there was some evidence indicating that some merchants had engaged in deceptive practices, the state has provided that criminal penalties may be imposed on anyone posting any untrue, misleading, deceptive or fraudulent business advertisement. (See Bus. & Prof. Code, §§ 17562-17568.)

In a final attempt to justify the ordinance, the city urges that there is testimony indicating that the rate sign ordinance can be upheld on economic grounds in that tourists, having made reservations at a luxury hotel at a $20 a day rate, are disgruntled at having to pay a higher rate or cancel their reservations upon discovering the existence of accommodations at a much lower rate. The argument is specious. It is common knowledge that luxury hotels charge higher prices for accommodations because of the conveniences, services and appointments accorded therein, as contrasted with the limited services provided in a modest hotel. The foregoing argument indicates that the city is partial to the owners of the luxury hotels. In the event the ordinance tends to favor one class of businessmen over another, it is discriminatory. (See *Eskind* v. *City of Vero Beach* (Fla.) *supra*, 159 So.2d 209, 211-212.)

The judgment is reversed.

Gardner, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied February 10, 1971, and respondents' petition for a hearing by the Supreme Court was denied March 26, 1971.