Opinion
DOWDS, J.
Ala Carte Catering Co. was charged in a series of citations with violating section 80.73 (b) of the Los Angeles Municipal Code, which relates to unlawful dispensing of victuals from catering trucks, and with violating section 80.69 (b) of the same code,[1] which relates to parking in violation of “No Parking” signs. Ala Carte demurred to the complaints, claiming that section 80.73 (b) was unconstitutional in that it attempted to control competition between stationary and mobile restaurants, that it discriminated against Ala Carte and invaded an area preempted by state law. The trial court sustained the demurrers with respect to this section on the basis that it discriminated economically against catering truck operations and was a “rather naked restraint of trade.” The People appeal from the judgments of dismissal of the charges under section 80.73 (b) which followed this ruling.[2]
Ala Carte also demurred with respect to the charges of violating section 80.69 subdivision (b), on the grounds that the ordinance attempted to delegate to the Los Angeles traffic department a nondelegable authority reserved to the city council, and that the procedures followed by the traffic department in placing the signs were unconstitutional and therefore “the signs are unenforceable.” Further, Ala Carte moved to dismiss the complaints on the ground of discriminatory enforcement. The trial court overruled the demurrers to the charges under section 80.69 (b) and, after a hearing in which witnesses testified and exhibits were received, denied the motion. Ala Carte appeals from the judgments of conviction which followed its subsequent pleas of guilty to the charges of violating section 80.69 (b).
The People’s Appeal
Section 80.73 reads as follows:“SEC. 80.73. Unlawful Parking— Peddlers—Vendors (a) It shall be unlawful for any person to stop, *Supp. 5 stand, or park any vehicle, wagon, or pushcart for the purpose of peddling, hawking, displaying or offering for sale therefrom any goods, wares, merchandise, fruit, vegetables, beverages, or food of any kind, on any street within this City except as allowed under Section 42.00 of this Code, or as provided for in this section. (Amended by Ord. No. 150,561, Eff. 3/19/78.)
“(b.) Catering Trucks. (Amended by Ord. No. 150, 561, Eff. 3/19/78.) 1. Definitions: For purposes of this section the following definitions shall apply: A. Street shall mean all of that area dedicated to public use for public street purposes and shall include, but not be limited to roadways, parkways, alleys, sidewalks, and public ways. B. Catering truck shall mean any vehicle, wagon or pushcart used for dispensing victuals. C. Dispense or dispensing shall mean peddling, hawking, displaying, soliciting the sale of, offering or exposing for sale, selling, distributing or giving away. D. Victuals shall mean fruit, meat, vegetables, beverages or food of any kind, nutritious or otherwise, dispensed in prepared, packaged or other form suitable for immediate ingestion or consumption by human beings. For purposes herein, victuals shall not include other goods, wares, or merchandise. 2. Restrictions: A. No person shall dispense victuals at or from: (1) Any location within the central area described in Subsection (c) below except as therein provided. (2) Any location within 100 feet of the nearest part of: (aa) any intersection; (bb) the street entrance to any stationary or fixed restaurant, cafeteria, lunch counter, or other eating facility dispensing victuals, provided, however, that if said stationary or fixed facility is not directly accessible from the street, the 100 foot distance shall be measured from the nearest part of the street entrance to the building or property which is the nearest entrance to the eating facility open and available to the public. (3) Any location within 200 feet of: (aa) the nearest property line of any school; (bb) the roadway of any freeway on-ramp or off-ramp. In the event of a conflict between any of the above specified distances and a greater distance otherwise required by law, said greater distance shall prevail and be controlling. B. No person shall stop, stand or park a catering truck upon any street for the purpose of dispensing victuals under any circumstances in violation of stopping, standing or parking prohibitions or restrictions either shown by signs or curb markings or as otherwise provided by the State Vehicle Code or the health, safety, fire, traffic, business or other regulations set forth in the Los Angeles Municipal Code. C. No person shall dispense victuals from any portion of a catering truck on any street in any man *Supp. 6 ner which causes any person to stand in that portion of the street which is between the catering truck and the center of the street. D. Persons who dispense victuals under the provisions of this section may not do so unless at that time they provide or have available in a conspicuous place in the immediate vicinity of the catering truck, a litter receptacle which is clearly marked with a sign requesting its use by patrons. E. After dispensing victuals, at any location, a catering truck operator, prior to leaving the location, shall pick up, remove and dispose of all trash or refuse which consists of materials originally dispensed from the catering truck, including any packages or containers, or parts of either, used with or for dispensing the victuals.
“(c) (Amended by Ord. No. 150, 561, Eff. 3/19/78.) No person shall stop, stand or park any catering truck, wagon or other vehicle or a pushcart for the purpose of dispensing victuals on any street within that central area in the City of Los Angeles hereinafter set forth, except that a pushcart may be operated for said purpose between the hours of 6:30 p.m. and 2:00 a.m. of the following day. For purposes herein, the central area of the City is that area bounded: 1. On the north by Sunset Boulevard to Alameda to Temple Street, to San Pedro Street; 2. On the east by San Pedro Street; 3. On the south by Pico Boulevard; 4. On the west by Figueroa Street.
“(d) No person shall park or stand any vehicle, or wagon used or intended to be used in the transportation of property for hire on any street while awaiting patronage for such vehicle, or wagon without first obtaining a written permit to do so from the Department which shall designate the specific location where such vehicle may stand. No permit shall be issued for any such location within the Central Traffic District. (Amended by Ord. No. 134, 523, Eff. 7/17/67.)
“(e) No person shall stand or park a vehicle upon any street for the purpose of displaying such vehicle for sale by sign or otherwise. (Amended by Ord. No. 134, 523, Eff. 7/17/67.)
“(f) Whenever any permit is granted under the provisions of this section and a particular location to park or stand is specified therein, no person shall park or stand any vehicle, wagon, or push cart on any location other than as designated in such permit. In the event that the holder of any such permit is convicted in any court of competent jurisdiction, for violating any of the provisions of this Section, such permit *Supp. 7 shall be forthwith revoked by the Department upon the filing of the record of such conviction with it, and no permit shall thereafter be issued to such person until six (6) months have elapsed from the date of such revocation. (Amended by Ord. No. 134, 523, Eff. 7/17/67.)
“(g) Notwithstanding the provisions of Section 80.76, every violation of any of the provisions of this section shall be punishable as an infraction, and shall be punished by a fine of not less than $25.00 for the first violation, a fine of not less than $50.00 for the second violation of this section within one year and a fine of not less than $100.00 for each additional violation of any of the provisions of this section within one year. (Amended by Ord. No. 150, 561, Eff. 3/19/78.)”
Section 42.00, referred to in section 80.73 (a) above, generally prohibits the sale of goods, wares and merchandise on public streets with exceptions which are not pertinent to this appeal. Reading the two sections together, we determine the apparent legislative intent was to permit the sale of victuals on the public streets in the areas outside the limitations of section 80.73 (b) 2A. Ala Carte’s primary contention and the basis upon which the trial court sustained its demurrer is that section 80.73 (b) 2A (2) (bb), by prohibiting the dispensing of victuals at or from any location within 100 feet of the nearest part of the street entrance to any stationary or fixed restaurant, cafeteria, lunch counter or other eating facility dispensing victuals, denies it equal protection of the laws and unconstitutionally discriminates in favor of restaurants having a fixed location.
We commence our consideration of the People’s appeal with the realization that no presumption of invalidity of the ordinance will obtain, but to the contrary, every intendment will be indulged in favor of its validity. (Hart v. City of Beverly Hills (1938) 11 Cal.2d 343, 348 [79 P.2d 1080].) We further recognize that “there is no vested right to do business upon the public streets.” (San Francisco Street Artists Guild v. Scott (1974) 37 Cal.App.3d 667, 670 [112 Cal.Rptr. 502].) Accordingly we assume, for the purposes of our discussion, that the City of Los Angeles could have constitutionally prohibited all sales on the public streets or, since a gradual approach to a problem is not constitutionally impermissible, it could have limited the prohibition to the sale of food on the public streets. (See New Orleans v. Dukes (1976) 427 U.S. 297, 305 [49 L.Ed.2d 511, 517-518, 96 S.Ct. 2513]; People v. Galena (1937) 24 Cal.App.2d Supp. 770, 775 [70 P.2d 724].)
*Supp. 8 Instead of a total prohibition of sales of “victuals” on the public streets, the City of Los Angeles elected in section 80.73 (b) 2A (2) (bb) to prohibit such sales within 100 feet of the nearest part of the street entrance to any stationary or fixed restaurant, cafeteria, lunch counter, or other eating facility dispensing victuals. As stated in New Orleans v. Dukes, supra, 427 U.S. at page 303 [49 L.Ed.2d at pages 516-517], except where a statutory classification or distinction trammels fundamental personal rights or is drawn upon the basis of inherently suspect factors, such as, race, religion or alienage, the constitutional requirements are that the classification be rationally related to a legitimate state interest. While the judiciary is not entitled to judge the wisdom or desirability of legislative policy, a wholly arbitrary restriction cannot stand consistently with the Fourteenth Amendment. (Id. at p. 304 [49 L.Ed.2d at p. 517].)
Accordingly our inquiry is directed to whether the restriction of sales by catering trucks within 100 feet of a stationary or fixed restaurant or similar establishment is a rational one or on the contrary is wholly arbitrary.
A somewhat similar task faced the Court of Appeal in Carlin v. City of Palm Springs (1971) 14 Cal.App.3d 706 [92 Cal.Rptr. 535]. Palm Springs had enacted an ordinance that prohibited the use of an outside business sign that makes references to prices or rates. The appellant court ascertained no rational distinction between rate and nonrate signs from the standpoint of public health, safety, morals or aesthetics and accordingly held the ordinance created an invalid classification.
The People assert that the legislative intent behind section 80.73 is found in ordinance 150,561 of the City of Los Angeles, which reads as follows:
“Whereas, the City Council finds that the unregulated stopping of vehicles for the sale of food and beverages on City streets, sidewalks and parkways constitutes a hazard to traffic and creates a nuisance to pedestrians; and [If] Whereas, the City Council finds that there is a public benefit in permitting the limited sale of food and beverages for immediate consumption on the city streets under the regulations set forth in this ordinance inasmuch as access to stationary or fixed facilities for serving food or beverages, as distinguished from mobile or roving facilities, may not always be reasonably available with respect to time or location:...”
*Supp. 9 We note first that the ordinance adopted pursuant to that intent makes no qualification as to the time when catering trucks are permitted to operate. As to location, the People assert that the prohibition against catering trucks selling foods near the entrance of a stationary restaurant serves a valid legislative purpose in that a closer location might create a traffic hazard and, further, that the limitation is a rational one in that the catering trucks perform a public good in providing sustenance to stranded wayfarers in other locations but are not so needed close to an established restaurant. They do not explain, however, how a catering truck is more of a traffic hazard within 100 feet of the entrance to a restaurant than it is within 100 feet of the entrance to a gas station or other commercial enterprise or why the presence of a catering truck would not provide the same life-preserving sustenance within 100 feet of a restaurant during hours or on a day that the restaurant is closed. Like the trial court, we conclude that section 80.73 (b) 2A (2) (bb) is a “rather naked restraint of trade,” and determine that it is “... arbitrarily made for the mere purpose of classification,.. .[and not] based upon [a] distinction, natural, intrinsic or constitutional, which suggests a reason for, and justifies, the particular legislation.” (Carlin v. City of Palm Springs, supra, at p. 712.) Accordingly, the trial court properly sustained the demurrer to the charges based on section 80.73 (b) 2A (2) (bb).[3] We need not reach Ala Carte’s other contentions as to the unconstitutionality of the ordinance or its application.
Ala Carte’s Appeal
Ala Carte’s appeal from the judgments of conviction on its pleas of guilty to the charges of violating section 80.69 (b) is argued under three headings: A. The court erred in refusing to strike the declarations [apparently referring to declarations of Mr. Frederickson, Officer Thompson and Mrs. King offered in opposition to defendant’s motion to dismiss based on alleged discriminatory enforcement]; B. Discriminatory enforcement of the parking ordinance was proven and the citations should have been dismissed; and C. The “No Parking at Anytime” signs were illegally posted. Ala Carte has provided us with a transcript of only part of the proceedings below and with no agreed or settled statement. We recognize that we have denied Ala Carte’s very belated *Supp. 10 request, made after the appeal had been fully briefed, to augment the record with “the testimony” of two witnesses. Even if that motion had been granted, there would have been great gaps in the record. We, of course, have no way of knowing what testimony the trial court heard and relied on in making its determinations. We do note from Ala Carte’s brief that that trial judge said he didn’t look at the Frederick, Thompson and King declarations, from which it would appear that if any error occurred in admitting the declarations into evidence, the error would not be prejudicial. What we do have of a record seems to indicate that Ala Carte fell short of proving discriminatory enforcement within the meaning of Murgia v. Municipal Court (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44]. There the court said: “As we have explained, in order to establish a claim of discriminatory enforcement a defendant must demonstrate that he has been deliberately singled out for prosecution on the basis of some invidious criterion.” (id. at p. 298) and that there is an “. . . important distinction between ‘deliberate invidious discrimination’ and ‘non-arbitrary selective enforcement’. ...” (Id. at p. 300.) Even if there were testimony, as contended by Ala Carte in its brief, that the driver of its truck was cited for stopping his truck immediately upon stopping in a “no parking” zone and warned that he would be arrested and the vehicle impounded if it were not removed, and that the same procedure was not followed as to other illegally parked vehicles, such evidence would not in itself establish the defense of discriminatory enforcement within the Murgia rule.
Ala Carte’s contention that the “No Parking” signs were illegally posted appears to be based largely if not entirely upon certain exhibits which, Ala Carte contends, demonstrate that the City of Los Angeles improperly delegated to owners of abutting land the power to determine what parking restrictions should apply to the streets adjoining their property. We have examined the exhibits and have concluded that the trial court was entirely justified in interpreting such documents as indicating only that the views of adjoining property owners would be considered, not that they would be determinative. To the extent that the contention is that the authority to direct the placement of “No Parking” signs was improperly delegated to the board of traffic commissioners rather than being retained by the city council, we reject the argument. As stated in Birkenfeld v. City of Berkeley (1976) 17 Cal.3d 129, 167 [130 Cal.Rptr. 465, 550 P.2d 1001]: “A municipal legislative body is constitutionally prohibited from delegating the formulation of legislative policy but may declare a policy, fix a primary *Supp. 11 standard, and authorize executive or administrative officers to prescribe subsidiary rules and regulations that implement the policy and standard and to determine the application of the policy or standard to the facts of particular cases. (Kugler v. Yocum (1968) 69 Cal.2d 371, 375-376 [71 Cal.Rptr. 687, 445 P.2d 303].)” A rule that the city council in a city the size of the City of Los Angeles would have to exercise directly the placement of parking signs would be nonsensical. We perceive no error in the trial court’s overruling of Ala Carte’s demurrer to the charges under section 80.69 (b) or its denial of its motion to dismiss such charges.
Disposition
The judgments (orders) of dismissal with respect to the charges under section 80.73 (b) are affirmed.
The judgments of conviction with respect to the charges under section 80.69 (b) are affirmed.
Saeta, J., concurred.

These sections are hereinafter referred to simply by their numbers.

Actually, dismissals were not entered until after the People had appealed. We previously granted a motion to consider the People’s appeals to have been timely taken from the subsequently entered dismissals. (Rule 182 (a), Cal. Rules of Court.)

We do not imply that there is any constitutional infirmity to the remainder of the ordinance, particularly in view of the fact that Los Angeles Municipal Code section 11.00 states that the city council would have adopted each subsection of the code irrespective of the fact that another subdivision be declared invalid or unconstitutional.